## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CASSANDRA JOHNSON,                    :
                                      :
         Plaintiff                    :
                                      :         CIVIL ACTION
    v.                                :         NO. 04-1450 (JJF)
                                      :
WAL-MART STORES, INC.,                :
                                      :
         Defendant.                   :
                                      :

---

## BRIEF AND APPENDIX OF DEFENDANT WAL-MART STORES, INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

William M. Kelleher (#3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 12th Floor
Wilmington, DE 19801
(302) 252-4460

OF COUNSEL:
David S. Fryman
Farrah I. Gold
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS ................................................. 2

II.   SUMMARY OF ARGUMENT .................................................................. 2

III.  STATEMENT OF UNDISPUTED FACTS .................................................. 3

      A.    Positions At Issue.................................................................. 3

      B.    The Pay Rates at Issue ......................................................... 4

      C.    Plaintiff's Employment History............................................... 5

      D.    The Alleged Comparators ...................................................... 7

      E.    The Alleged Harassment........................................................ 10

      F.    The Alleged Retaliation ........................................................ 11

IV.   ARGUMENT......................................................................................... 12

      A.    Summary Judgment Standard ................................................ 12

      B.    Plaintiff Cannot Demonstrate That She Received Unequal Pay Under The
            Equal Pay Act . ....................................................................... 12

            1.    Plaintiff Cannot Establish That She Received Unequal Wages For
                  For Work Which Was Equal In Terms Of Skill, Effort, And
                  Responsibility Under Similar Working Conditions....................13

            2.    Even Assuming, Arguendo, That The Tire Cashier and Tire Technician
                  Positions Were Equal, Any Pay Differences Between Plaintiff And Her
                  Alleged Comparators Are Supported By Factors Other Than Sex ............15

      C.    Plaintiff Cannot Demonstrate That She Was Paid Less Than Her Male Co-
            workers in Violation of Title VII. ........................................... 16

      D.    Plaintiff Did Not Exhaust Her Administrative Remedies With Respect To
            Her Harassment or Retaliation Claims. .................................. 17

      E.    Even if Plaintiff Had Exhausted Her Administrative Remedies with
            Respect to Her Sexual Harassment Claim, Plaintiff Cannot Demonstrate
            That She Was Subjected to A Hostile Work Environment..................... 18

|  | 1. | Plaintiff's Allegations of Harassment Are Unrelated to Her Gender | 19 |
|--|----|------------------------------------------------------------------|----|
|  | 2. | The Alleged Harassment Was Not Severe or Pervasive | 21 |
| F. |  | Plaintiff Cannot Prove Retaliation. | 23 |
|  | 1. | Plaintiff Was Not Subjected to An Adverse Employment Action. | 23 |
|  | 2. | Plaintiff Cannot Establish A Causal Connection Between Her Alleged Protected Activity and Any Alleged Adverse Employment Action. | 24 |
| V. |  | CONCLUSION | 26 |

DMEAST #9085017 v3

## TABLE OF AUTHORITIES

### FEDERAL CASES

Andrews v. City of Philadelphia, 89 F. 2d 1469 (3d Cir. 1990)....................................................19

Angelo v. Bacharach Instrument Company, 555 F.2d 1164 (3d Cir. 1977) ...........................13, 14

Baer v. Reliant Energy Mid-Atlantic Power Holdings, LLC, No. 01-1646, 2002
    U.S. Dist. LEXIS 12160 (E.D. Pa. May 16, 2002) .............................................................14

Bishop v. National Railroad Passenger Corporation, 66 F. Supp. 2d 650 (E.D. Pa.
    1999) .......................................................................................................................................22

Bonora v. UGI Utilities, Inc., No. 99-5539, 2000 U.S. Dist. LEXIS 15172 (E.D.
    Pa. Oct. 18, 2000) ..................................................................................................................21

Burlington Indus., Inc. v. Ellerth, 524 U.S. 724, 761 (1998)..................................................23, 24

Celotex Corporation v. Catrett, 477 U.S. 317 (1986) ...................................................................12

Decesare v. National Railroad Passenger Corporation, Civ. A. No. 98-3851, 1999
    WL 330258 (E.D. Pa. 1999) ..............................................................................................22, 24

Drinkwater v. Union Carbide Corporation, 904 F.2d 853 (3d Cir. 1990) ....................................21

Equal Employment Opportunity Commission v. Mercy Hospital and Medical
    Center, 709 F.2d 1195 (7th Cir. 1983).................................................................................14

Faragher v. City of Boca Raton, 524 U.S. 775 (1998)..................................................................21

Gautney v. Amerigas Propane, Inc., Civ. A. No. 99-197, 2000 WL 1053563 (E.D.
    Pa. July 28, 2000)..............................................................................................................21, 22

Hodgson v. Golden Isles Convalescent Homes, 468 F.2d 1256 (5th Cir. 1972)...........................13

Igwe v. E.I. Dupont de Nemours, No. 03-839, 2005 U.S. Dist. LEXIS 1254 (D.
    Del. Jan. 24, 2005) (Farnan J.) ..............................................................................................24

J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d
    1245 (1st Cir. 1996) ...............................................................................................................12

Kelly v. Drexel University, 94 F.3d 102 (3d Cir. 1996).................................................................25

Kenney v. Footlocker Worldwide, 55 Fed. Appx. 35 (3d Cir. 2002) .............................................25

Kunin v. Sears Roebuck and Company, 175 F.3d 289 (3d Cir.), cert. denied, 120
    S.Ct. 398 (1999)......................................................................................................................19

Lawrence v. National Westminster Bank, 98 F.3d 61 (3d Cir. 1996) ............................................12

Love v. Pullman, 404 U.S. 522 (1972) ...........................................................................................17

Matsushita Electric Indus. Company v. Zenith Radio Corporation, 475 U.S. 574
    (1986)......................................................................................................................................12

McNair v. Home Depot, No. 01-3173, 2002 U.S. Dist. LEXIS 11844 (E.D. Pa.
    Jan. 10, 2002).................................................................................................................24

Molthan v. Temple University, 442 F. Supp. 448 (E.D. Pa. 1977), aff'd, 778 F.2d
    955 (3d Cir. 1985)....................................................................................................16, 17

Moore v. Grove North Am., Inc., 927 F. Supp. 824 (M.D. Pa. 1996)...........................................19

Ostapowicz v. Johnson, 541 F.2d 394 (3d Cir. 1976), cert. deniec, 429 U.S. 1041
    (1977)...............................................................................................................................17

Poland v. Computer Sciences Corporation, No. 04-217 (GMS), 2005 U.S. Dist.
    LEXIS 22618 (D. Del. Oct. 5, 2005) ..................................................................................24

Reyes v. McDonald Pontiac-GMC Truck, Inc., 997 F. Supp. 614 (D. N.J. 1998) ..................19, 20

Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997)......................................................25

Sarko v. Penn-Del Directory Company, 968 F. Supp. 1026 (E.D. Pa. 1977)................................12

Schoonejongen v. Curtiss-Wright Corporation, 143 F.3d 120 (3d Cir. 1998)...............................12

Secretary of Labor v. Washington Hospital 475 F. Supp. 1242 (W.D. Pa. 1979).........................13

Seldomridge v. Uni-Marts, Inc., No. 99-496 GMS, 2001 U.S. Dist. LEXIS 9492,
    at * 20-29 (D. Del. July 10, 2001) ...............................................................................19, 21

Sharpless v. Summers, No. 00-3260, 2001 U.S. Dist. LEXIS 1219 (E.D. Pa.
    2001), aff'd, 281 F.3d 224 (3d Cir. 2002) ...........................................................................17

Shramban v. Kushnerick, 262 F. Supp. 2d 531 (E.D. Pa. 2003), aff'd, No. 03-
    2742, 2004 U.S. App. LEXIS 23374 (3d Cir. Sept. 30, 2004) ...........................................19

Solt v. Alpo Petfoods, Inc., 837 F. Supp. 681 (E.D. Pa. 1993), aff'd, 30 F.3d 1488
    (3d Cir. 1994)......................................................................................................................12

Stewart v. INS, 762 F.2d 193, 198 (2d Cir. 1985).........................................................................17

Tillman v. Pepsi Bottling Group, No. 04-1314 SLR, 2005 U.S. Dist. LEXIS
    18891 (D. Del. Aug. 30, 2005) ....................................................................................17, 18

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ..............................................................12

Usery v. Columbia University, 568 F.2d 953 (2d Cir. 1977) ........................................................14

Waite v. Blair, Inc., 937 F. Supp. 460 (W.D. Pa. 1995), aff'd, 79 F.3d 1140 (3d
    Cir. 1996)............................................................................................................................19

Walton v. Mental Health Association of Southeastern Pennsylvania, 168 F.3d 661
    (3d Cir. 1999)......................................................................................................................19

Weston v. Commonwealth of Pennsylvania, 251 F.3d 420 (3d Cir. 2001) ....................................23

Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir.), cert. denied, 522 U.S. 914
    (1997)..................................................................................................................................23

## FEDERAL STATUTES

Fed. R. Civ. P. 56(c) ...........................................................................................................................12

29 U.S.C. 206(d)(1) ........................................................................................................................2, 13

42 U.S.C. § 2000e-2(h) ................................................................................................................16, 23

42 U.S.C.A. § 2000e-5....................................................................................................................2, 17

## FEDERAL REGULATIONS

29 C.F.R. § 1620.27 ...........................................................................................................................16

## I.    NATURE AND STAGE OF PROCEEDINGS

This is an employment discrimination case. On November 15, 2004, plaintiff Cassandra Johnson filed her complaint, alleging that Wal-Mart Stores, Inc. ("Wal-Mart") discriminated against her on the basis of sex under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206, and retaliated against her after she complained of discrimination. Wal-Mart filed its Answer on January 13, 2005. The parties completed discovery on August 31, 2005.

Wal-Mart now moves for summary judgment because, even accepting plaintiff's version of the facts, plaintiff cannot establish that Wal-Mart discriminated or retaliated against her.

## II.    SUMMARY OF ARGUMENT

Plaintiff is a "tire cashier" at the Dover, Delaware Sam's Club.[1] Plaintiff's complaint asserts that Wal-Mart: (1) paid her lower wages than male counterparts for substantially equal work; (2) harassed her on the basis of her sex; and (3) retaliated against her for complaining of discrimination. As detailed below, plaintiff's claims under Title VII and the Equal Pay Act fail for several reasons:

- Plaintiff measures her pay against male **tire technicians**, yet tire technicians, those who actually perform the tire maintenance and installation, have significantly different duties than **tire cashiers**, who spend their time servicing customers and performing similarly non-physical work.

- Moreover, even assuming the work of a tire technician were substantially equal to the work of a tire cashier, any differences in pay are explained by the undisputed differences in prior experience and performance, not gender. Indeed, plaintiff earned **more** as a tire cashier than one of the male tire technicians she identified in support of her claim.

---

[1]    Sam's Club is the unincorporated business unit of Wal-Mart that operates Sam's Club membership clubs. (See www.walmartstores.com; www.samsclub.com).

- Plaintiff did not exhaust her administrative remedies with respect to her claims of harassment and retaliation. These wholly distinct allegations did not appear until plaintiff filed her federal court complaint and were not investigated by the EEOC.

- Even if she had exhausted her administrative remedies, plaintiff, who admittedly loves her job, cannot demonstrate that the alleged harassment was gender based or that it was severe or pervasive. Over the course of two years, plaintiff could only specify a single gender-neutral reference to her as a "big bear" in the context of a conversation in which the alleged harasser made similar animal references to male co-workers, including himself, and a tasteless picture of a large woman that was shown to co-workers a single time.

- Plaintiff's claim of retaliation fails for the additional reasons that plaintiff did not suffer an adverse employment action and cannot demonstrate a causal connection between her complaint of pay discrimination and any alleged retaliation. That plaintiff was subjected to unspecified harassment or that Wal-Mart did not accommodate her schedule after she filed a charge of discrimination with the EEOC, even if true, do not constitute adverse employment actions. Plaintiff remains employed, has not been demoted, disciplined, or transferred and has continued to receive pay increases consistent with her performance and position. Nor is there any evidence, in any event, of any causal connection between plaintiff's complaint of discrimination and any of the alleged harassment or alleged failure to adjust her schedule.

Accordingly, judgment should be entered in favor of Wal-Mart and against plaintiff on all counts of her complaint.

## III.    STATEMENT OF UNDISPUTED FACTS[2]

### A.    Positions At Issue[3]

The tire cashier performs the functions one would expect of the person behind the counter and register of a tire service center. (Job Description of Tire Cashier, at Ex. B). His or her work includes relatively non-physical, non-technical tasks such as scanning merchandise, using computers for basic functions, handling damaged merchandise, and selling memberships,

---

[2]    Pursuant to the Court's Order, Wal-Mart certifies that no genuine issue of material fact exists with respect to the facts set forth in this motion.

[3]    As plaintiff admits that she did not have any male co-workers before she moved to the tire department, the positions at issue are those of tire cashier and tire technician. (Plaintiff's Deposition, Ex. A, at 59).

merchandise, and warranties. (Id.). Tire cashiers spend the majority of their time in the store, in a climate-controlled, clean environment. (Id.; Plaintiff's Dep., Ex. A, at 23).

In contrast, tire technician work is physically demanding and technical in nature. (Job Description of Tire Technician, at Ex. C). Tire technicians spend the majority of their time working on cars and mounting tires in a non-climate controlled environment. (Id.; Plaintiff's Dep., Ex. A, at 18, 30, 73-74). As plaintiff articulated the distinction at her deposition, as a tire cashier, she does not "perform physical work on the car every day" whereas tire technicians must "[b]e physically prepared every morning to put a tire on a car." (Plaintiff's Deposition, Ex. A, at 18, 30, 73-74).

## B.    The Pay Rates at Issue

Pay rates at the Dover, Delaware Sam's Club are based on three factors: (1) the nature of the position; (2) the individual skills that the associate brings to the job through prior experience; and (3) performance. (Declaration of Cornell Randolph ("Randolph Dec."), Ex. D, at ¶ 1). Seniority is relevant only to the extent that pay increases accrue over time. (Id. at ¶ 2).

Regarding the first criterion, different positions have different minimum rates of pay. (Id. at ¶ 3). For example, reflecting the significant differences in skills, responsibilities, and working conditions, in the beginning of 2004, the minimum starting rate for tire technicians was $9.00 per hour, while the minimum starting rate for tire cashiers was $7.70 per hour. (Id. at ¶ 3).

Regarding the "individual skills" criterion, although neither the tire technician nor tire cashier positions require prior experience, Wal-Mart values relevant prior experience. (Id. at ¶ 4). As a result, applicants with significant applicable work experience may receive a starting rate above the minimum rate. (Id. at ¶ 4).

Regarding the "performance" criterion, performance can affect pay in two ways: (1) through annual pay increases; and (2) through merit raises. (Id. at ¶ 5). Wal-Mart provides

annual performance evaluations, which not only establish goals, appraise an associate's performance, and serve as development/training plans, but also determine annual pay increases. (Randolph Dec., Ex. D, at ¶ 6; Employee Handbook, Ex. E, at 19). More specifically, the employee's overall rating corresponds with a particular pay increase. (Id.). For example, in 2004, evaluations were based on a 16-point scale, with a rating of 16 meriting a $0.50 per hour raise; a rating of 14-15 meriting a $0.40 per hour raise; a rating of 13 meriting a $0.30 per hour raise; and a rating of 12 or lower resulting in no pay raise. (Randolph Dec, Ex. D at ¶ 6).

Merit raises (i.e., increases separate and apart from the annual pay raise) are rare, and are given only to those employees who demonstrate exceptional performance. (Id. at ¶ 7). Associates who are not meeting expectations in attendance or who have had a coaching since the last performance evaluation are not eligible for a merit raise. (Id. at ¶ 8). Employees may ask their manager to recommend a merit raise or managers can request merit raises on behalf of employees. (Id. at ¶ 9). Additionally, associates are ineligible to receive a merit raise three months before and six months after performance evaluations. (Deposition of Jeremy Stone ("Stone Dep."), Ex. F, at 24). Managers must use discretion in granting merit raises and are guided by their personal knowledge of employee contributions to Wal-Mart. (Id. at 24-25; Randolph Dec., Ex. D, at ¶ 9).

### C. Plaintiff's Employment History

On September 30, 1996, Wal-Mart hired plaintiff as a front-end cashier. (90 Day Evaluation, attached as Ex. G). Throughout her career, plaintiff has received good, but not excellent, reviews, and her pay raises have reflected those evaluations:

- Plaintiff started at the minimum pay rate for front-end cashiers in 1996, which was $6.50 per hour. (Randolph Dec., Ex. D, at ¶ 11; 90 Day Evaluation, Ex. G).

- In her 90-day evaluation, plaintiff earned a rating of "standard" and the rating's corresponding pay increase of $0.30 per hour, for a pay rate of $6.80 per hour. (Id.).

- In March 1997, plaintiff received a six-month review in which she was advised that she had to "improve on selling extended warranties." (Randolph Dec., Ex. D, at ¶ 13; Associate Evaluation Form dated March 30, 1997, attached as Ex. H).

- In September 1997, plaintiff earned an above standard rating. Correspondingly, she received a $0.40 per hour pay increase, for a pay rate of $7.20 per hour. Nonetheless, plaintiff was instructed that she had to improve her "sense of urgency" in dealing with clients. (Randolph Dec., Ex. D, at ¶ 14; Associate Evaluation Form dated September 30, 1997, attached as Ex. I).

- In 1998, Wal-Mart again found plaintiff lacking in the area of urgency, but her performance still warranted an above standard rating and a $0.40 per hour pay increase, for a pay rate of $7.60 per hour. (Randolph Dec., Ex. D, at ¶ 15; Associate Evaluation Form, dated September 30, 1998, attached as Ex. J).

- In June 1999, Wal-Mart promoted plaintiff from front-end cashier to membership and marketing and granted her a $0.50 per hour pay increase, for a pay rate of $8.10 per hour. (Randolph Dec., Ex. D, at ¶ 16).

- In her 1999 evaluation, plaintiff again received an above average rating, but again was reminded that she had to improve her sense of urgency and sales. (Randolph Dec., Ex. D, at ¶ 17; Performance Review dated August 20, 1999, attached as Ex. K). Her 1999 pay increase was $0.40 per hour, for a pay rate of $8.50 per hour.

- In 2000, plaintiff's performance declined to average. Accordingly, she received a pay increase of $0.30 per hour, for a pay rate of $8.80. (Randolph Dec., Ex. D, at ¶ 18).

- On March 12, 2001, before her 2001 annual review, plaintiff received a written coaching regarding insufficient credit sales that adversely impacted her productivity. (Randolph Dec., Ex. D, at ¶ 19; Coaching for Improvement Form dated March 12, 2001, attached as Ex. L).

- On August 25, 2001, plaintiff transferred laterally to the position of tire cashier. In her 2001 evaluation, Wal-Mart noted that plaintiff failed to focus on "opportunities in credit contribution." (Randolph Dec., Ex. D, at ¶ 20; Performance Evaluation dated September 7, 2001, attached as Ex. M). Wal-Mart gave her a $0.40 per hour pay increase, for a pay rate of $9.20 per hour. (Id.).

- In 2002, plaintiff again earned a $0.40 per hour pay increase, for a pay rate of $9.60 per hour. (Randolph Dec., Ex. D, at ¶ 21; Performance Evaluation dated September 3, 2002, attached as Ex. N). Wal-Mart management advised plaintiff

that to receive a larger pay increase, she had to improve in the dependability/responsibility category by making herself more available. (Id.).

- In her 2003 annual review, plaintiff again was rated as deficient in the dependability/responsibility sub-category and in the effort/initiative sub-category of the "strive for excellence" category. (Randolph Dec., Ex. D, at ¶ 22; Performance Evaluation dated September 4, 2003, at Ex. O). Nonetheless, she still qualified for, and received, a $0.40 per hour pay increase, for a pay rate of $10.00 per hour. (Id.). That rate was $2.30 per hour above the minimum starting rate for her position at that time. (Id.).

- As a result of an internal assessment done by Wal-Mart, many positions received pay increases during the summer of 2004, including plaintiff's position. Plaintiff received a $0.66 per hour pay increase at that time, for a pay rate of $10.66 per hour. (Randolph Dec., Ex. D, at ¶ 23; Associate's Commendation Form dated June 8, 2004, at Ex. P).

- In her 2004 annual review, plaintiff was rated as lacking in the effort/initiative sub-category of the "strive for excellence" category and the proper dress code sub-category of "service to the member" category. (Randolph Dec., Ex. D, at ¶ 24; Performance Evaluation dated September 8, 2004, attached as Ex. Q). Yet plaintiff qualified for and received an additional $0.40 per hour pay increase for a pay rate of $11.06 per hour. (Id.).

As set forth above, plaintiff's performance has not been exceptional, and thus, has not substantiated a merit raise. (Randolph Dec., Ex. D, at ¶ 25; Exs. G-Q; Stone Dep., Ex. F, at 24). Additionally, as stated in several evaluations, plaintiff has failed to meet Wal-Mart's attendance standards, which precluded her from receiving a merit raise. (See Randolph Dec., Ex. D, at ¶ 25; Exs. N-O; Stone Dep., Ex. F, at 24). Plaintiff did not have any prior experience as a cashier that would have warranted her receiving a higher rate of pay in that position. (Plaintiff's Dep., Ex. A, at 9-10).

### D.   The Alleged Comparators

Plaintiff has identified Johnny Revis, Myron Dennis, Nathan Gibson, and Kevin Rash, all of whom are or were tire technicians, not tire cashiers, as her comparators. (Plaintiff's

Dep., Ex. A at 58-59, , 62, 66 at; Complaint at ¶16).[4]  As set forth above, as tire technicians,

these individuals perform mostly physical labor, working on the cars, while plaintiff spends the

majority of her time in the store with customers. (Plaintiff's Dep., Ex. A, at 18, 30, 73-74; Job

Description of Tire Cashier, at Ex. B; Job Description of Tire Technician, at Ex. C).  As also

noted above, the physical demands of the tire technician position warrant a higher rate of pay.

(Plaintiff's Dep., Ex. A, at 18, 30, 73-74; Job Description of Tire Technician, at Ex. C).

As set forth below, not only do these individuals differ from plaintiff with respect

to their position -- which in and of itself is fatal to plaintiff's claim that they are appropriate

comparators -- but also with respect to their prior experience and/or performance, which plaintiff

admittedly cannot dispute.  Indeed, plaintiff admitted at her deposition that she did not know the

prior experience or performance of any of her alleged comparators. (Plaintiff's Dep., Ex. A, at

60-67).

### Mr. Revis

- Wal-Mart actively recruited Mr. Revis because he had substantial related work
  experience as both a tire technician and a supervisor of a tire department.
  (Randolph Dec., Ex. D, at ¶ 27; Stone Dep., Ex. F, at 19-20; Deposition of Johnny
  Revis ("Revis Dep."), Ex. R, at 4-7, 11-13).  On August 6, 2003, Wal-Mart hired
  Mr. Revis as a tire technician at a starting pay rate of $10.00 per hour ($1.00 per
  hour above the minimum $9.00 per hour for tire technicians) based on his prior
  experience. (Randolph Dec., Ex. D, at ¶ 28; Evaluations of Johnny Revis,
  attached as Ex.S; Stone Dep., Ex. F, at 19-20).

- Mr. Revis' 90 Day Evaluation was perfect, warranting a $0.50 per hour pay
  increase, for a pay rate of $10.50 per hour. (Randolph Dec., Ex. D, at ¶ 29;
  Evaluations of Johnny Revis, at Ex. S).

---

[4]  While plaintiff became qualified to perform the functions of a tire technician in August 2003,
plaintiff remained a tire cashier and did not perform the duties of a tire technician. (Plaintiff's
Dep., at Ex. A, at 18, 74).  In fact, plaintiff admitted that she has not applied for, or expressed a
desire to become, a tire technician. (Plaintiff's Dep., Ex. A, at 18, 74).

- In November 2003, Mr. Revis was promoted to the team lead position -- a position for which plaintiff did not apply. (Randolph Dec., Ex. D, at ¶ 30; Stone Dep., at Ex. F, at 18-19; Revis Dep., Ex. R, at 16-17). As team lead, Mr. Revis earned a pay increase of $0.50 per hour, for a pay rate of $11.00 per hour. (Randolph Dec., Ex. D, at ¶ 30; Performance Evaluations of Johnny Revis, attached as Ex. S). Mr. Revis continued to receive exceptional evaluations, warranting pay raises consistent with those evaluations. (Id. at ¶ 31).[5]

Mr. Gibson

- Wal-Mart hired Mr. Gibson in April 1998 as a tire technician at a starting rate of pay of $6.50 per hour. (Randolph Dec., Ex. D, at ¶ 32; Performance Evaluation of Nathan Gibson, attached as Ex. T). At that time, plaintiff's rate of pay was $7.20 per hour and was increased to $7.60 later that year. (Id.). Mr. Gibson received two $0.40 per hour annual increases and four $0.50 per hour increases over the course of his employment. (Id. at ¶ 33).

- In 2002 and 2003, Mr. Gibson's performance evaluations were perfect. (Randolph Dec., Ex. D, at ¶ 34; Performance Evaluations of Nathan Gibson, attached as Ex. T). In recognition of his consistent exceptional performance, Mr. Gibson received three merit increases during his employment, taking him to a pay rate of $10.80 per hour. (Randolph Dec., Ex. D, at ¶ 34; Associate Commendation Forms of Nathan Gibson, attached as Ex. U).

Mr. Rash

- Mr. Rash, who started as a tire technician at Wal-Mart before plaintiff, likewise has had consistently above standard and exceptional performance ratings, including a number of perfect evaluations, which have warranted $0.40 and $0.50 increases throughout his employment with Wal-Mart. (Randolph Dec., Ex. D, at ¶ 35; Performance Evaluations of Kevin Rash, at Ex. V). After receiving another exceptional evaluation in 2004, Mr. Rash's rate of pay was $12.40 per hour. (Id.).

Mr. Dennis

- Wal-Mart hired Mr. Dennis as a tire technician on June 19, 2002 at a rate of $9.00 per hour. (Randolph Dec., Ex. D, at ¶ 36; Performance Evaluations of Myron Dennis, at Ex. W).

- Mr. Dennis received one $0.50 per hour pay increase and one $0.40 per hour pay increase, but at no time earned more than plaintiff. In fact, plaintiff admitted during her deposition that she is "not really certain of whether he ever made

---

[5]    Wal-Mart subsequently demoted Mr. Revis to the position of stocker in the grocery department. (Stone Dep., Ex. E, at 6-7; Revis Dep., Ex. R, at 17-19, 23).

anywhere near what [she] and Nate and Mr. Revis made." (Plaintiff's Dep., Ex. A , at 58).

### E.    The Alleged Harassment

Though not a separate count of her complaint, plaintiff also argues that she was harassed on the basis of her sex. (Compl. ¶¶ 18, 19). Plaintiff identified Mr. Revis as the only alleged harasser. (Plaintiff's Dep., Ex. A, at 87). When asked how Mr. Revis treated her in a harassing manner, however, plaintiff could identify only two isolated incidents:

- Plaintiff alleged that Mr. Revis once referred to her as a "big bear." (Id. at 26).

- Plaintiff alleged that Mr. Revis once brought a picture to work of a large woman that read "this is what happens when you eat lard." (Id. at 87).[6]

In fact, plaintiff admitted that Mr. Revis never made comments to her about her gender, and that any jokes made by Mr. Revis were based on her weight, stating "[i]t was always about me being big. Always." (Id. at 27, 44, 83). Plaintiff also admitted that Mr. Revis made jokes to men in the department, inexplicably claiming that the jokes Mr. Revis made to her were based on gender because she does not "remember anybody being upset over him saying, you know, any type of joke to them." (Id. at 56, 57). Yet, plaintiff admitted that she never asked whether it bothered others because "it didn't affect [her]." (Id.).

Mr. Revis testified, and plaintiff cannot refute, that he jokes with everyone. (Revis Dep., Ex. A, at 29. In fact, with respect to the "big bear", comment, Mr. Revis explained at his deposition that he made this reference in the context of a conversation in which the employees of the department were comparing themselves to animals. (Id. at 29-33). Mr. Revis

---

6    Although plaintiff attempted to claim that Mr. Revis made jokes all of the time, when pressed, she could identify only these two incidents. (Plaintiff's Dep., Ex . A, at 26, 87).

noted that he was compared to a sea lion and two other male employees were compared to Tweety Bird and a lion. (Id. at 30-33).

### F.    The Alleged Retaliation

Plaintiff also claims in her complaint that she suffered retaliation after complaining of sex discrimination. (Compl. at ¶ 24). Although somewhat cryptic, the crux of her claim appears to be Mr. Stone's alleged failure to accommodate her schedule. (Compl. at ¶ 24; Plaintiff's Dep., Ex. A, at 76-77). More specifically, plaintiff claims that, because she had complained of discrimination, Mr. Stone would not push back the time that she was scheduled to arrive at work, which she sought due to child care issues. (Plaintiff's Dep., Ex. A, at 76-77).[7] Following the filing of her charge of discrimination, plaintiff was not transferred, disciplined, demoted or subjected to any other change in working conditions. (Randolph Dec., Ex. D, at ¶ 38; Performance Evaluation dated September 8, 2004, Ex. Q). She continued to receive pay increases as she had in the past. (Id.).

---

[7] For purposes of this motion, Wal-Mart accepts, as it must, plaintiff's claim that it did not accommodate her scheduling request. It bears noting, however, that Mr. Stone testified that Wal-Mart did work with plaintiff to accommodate her scheduling requests. (Stone Dep., Ex. F, at 31-33).

## IV.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment must be granted when the pleadings, affidavits and discovery materials produce no "genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Lawrence v. National Westminster Bank, 98 F.3d 61, 65 (3d Cir. 1996). The non-moving party must point to specific evidence of record that demonstrates a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Although the Court must resolve all doubts and consider the evidence in the light most favorable to the opposing party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), the non-movant cannot escape summary judgment by introducing "a mere scintilla of evidence" in her favor, Sarko v. Penn-Del Directory Co., 968 F. Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), aff'd, 189 F.3d 464 (3d Cir. 1999), or by relying on "conclusory allegations, improbable inferences, and unsupported speculation[.]" J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996); accord Solt v. Alpo Petfoods, Inc., 837 F. Supp. 681 (E.D. Pa. 1993), aff'd, 30 F.3d 1488 (3d Cir. 1994). "[W]hen the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party," the moving party is entitled to summary judgment in its favor. Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

### B.    Plaintiff Cannot Demonstrate That She Received Unequal Pay Under The Equal Pay Act.

To establish a *prima facie* case of unequal pay, a plaintiff must demonstrate that she and a member of the opposite sex: (1) worked in the same establishment; (2) received unequal wages; (3) for work which was "equal" in terms of skill, effort, and responsibility; and

(4) which was performed under similar working conditions, except where such payment is made

pursuant to a seniority system, a merit system, a system which measures earnings by quantity or

quality of production, or a differential based on any other factor than sex.  See 29 U.S.C.

206(d)(1).  Plaintiff cannot establish these requisite elements.

> **1.      Plaintiff Cannot Establish That She Received Unequal Wages for Work Which Was Equal in Terms of Skill, Effort, and Responsibility Under Similar Working Conditions.**

In Angelo v. Bacharach Instrument Co., the Third Circuit explained that "[t]he

Equal Pay Act comprehends a threshold requirement, evident in the legislative history and

confirmed in the case law, that the jobs to be equated be substantially the same.  The requirement

of equality of job content inheres in the statutory term, 'equal work.'"  555 F.2d 1164, 1174 (3d

Cir. 1977).  "The courts have given effect to these manifestations of congressional intent, and

have indicated that the concept of equality under the Act embraces job content as well as skill,

effort, responsibility, and working conditions."  Id. at 1174-75.  As the court in Secretary of

Labor v. Washington Hospital recognized:

> The legislative history of the Equal Pay Act underscores the necessity of case-by-case analysis.  By substituting the term "equal work" for "comparable work", which was originally suggested, Congress manifested its intent to narrow the applicability of the Act. . . . It is not merely comparable skill and responsibility that Congress sought to address, but **substantial identity of job functions.**

475 F. Supp. 1242 (W.D. Pa. 1979) (quoting Hodgson v. Golden Isles Convalescent Homes, 468

F.2d 1256 (5th Cir. 1972) (emphasis added).[8]

---

[8]      The federal regulations provide that equal skill includes the consideration of factors such as experience, training, education, and ability; equal effort is concerned "with the measurement of the physical or mental exertion needed for the performance of a job;" and equal responsibility refers to "the degree of accountability required in the performance of the job."  29 C.F.R. §§ 1620.15-17.

In the <u>Angelo</u> case, the Third Circuit affirmed the grant of a directed verdict to the employer because the plaintiffs failed to satisfy their burden of demonstrating that the plaintiffs' bench assembler position was equal to the heavy assembler position held by male employees at the same plant. 555 F.2d 1164, (3d Cir. 1977); <u>see also, e.g.</u>, <u>Equal Employment Opportunity Comm'n v. Mercy Hosp. and Medical Ctr.</u>, 709 F.2d 1195 (7th Cir. 1983) (affirming finding that the defendant did not pay its female and male custodial employees disparately, as the highest paying positions required the use of heavy equipment and greater physical exertion); <u>Usery v. Columbia Univ.</u>, 568 F.2d 953 (2d Cir. 1977) (affirming the dismissal of the Secretary of Labor's action by the district court, agreeing that the type of work performed by defendant's heavy cleaners was unequal to that of light cleaners and justified the difference in wages); <u>Baer v. Reliant Energy Mid-Atlantic Power Holdings, LLC</u>, No. 01-1646, 2002 U.S. Dist. LEXIS 12160 (E.D. Pa. May 16, 2002) (granting summary judgment where plaintiff could not show that her job had ever been substantially the same as those held by two male employees).

Turning to the facts here, plaintiff cannot demonstrate that the work she performs as a tire cashier is equal to the work of a tire technician. As detailed in the Facts section above, the differences between the tire cashier and tire technician are stark and are effectively analogous to the differences between the cashier working the register in the climate-controlled area at the

front of the restaurant and the cook working over the hot stove in the kitchen. Consider the following:

| Tire Technician | Tire Cashier |
|---|---|
| Technical and physical. | Non-technical and non-physical. |
| Mount tires and service vehicles. | Scan merchandise; use computers; handling damaged merchandise; sell memberships, merchandise and warranties |
| Work under and around cars in non-climate controlled environment | Work in climate-controlled environment |

(Description of Tire Cashier, at Ex. B; Job Description of Tire Technician, at Ex. C; Plaintiff's Deposition, Ex. A, at 18, 30, 73-74).

Reflective of the above differences, tire technicians require additional technical training to perform their jobs. In fact, plaintiff received this training, but does not use it because she wants to be a tire cashier rather than a tire technician. (Plaintiff's Dep., Ex. A, at 18, 74). Simply put, the tire technician position is not equal to the tire cashier in terms of skill, effort or working conditions.

Because it is clear that plaintiff cannot establish that tire cashiers and tire technicians are equal positions under the Equal Pay Act, plaintiff's claim fails as a matter of law.

> **2.    Even Assuming, Arguendo, that the Tire Cashier and Tire Technician Positions Were Equal, Any Pay Differences Between Plaintiff and Her Alleged Comparators Are Supported By Factors Other Than Sex.**

Even if the tire cashier and tire technicians were deemed equal under the Equal Pay Act, which Wal-Mart maintains is not the case, plaintiff still cannot dispute that any differences in pay are supported by differences in prior experience and performance. Mr. Revis, who is no longer in the tire department, earned a higher rate of pay than plaintiff because he had

substantial related work experience in a supervisory position at Sears and he had consistently exceptional evaluations. (Randolph Dec., Ex. D, at ¶¶ 27-31; Performance Evaluations of Johnny Revis, at Ex. S). Similarly, Mr. Gibson and Mr. Rash had consistently exceptional evaluations, warranting a higher level of pay. (Randolph Dec., Ex. D, at ¶¶ 32-35; Performance Evaluations of Nathan Gibson, at Ex. T; Performance Evaluations of Kevin Rash, at Ex. V).

Further, any suggestion that male employees were paid at a higher rate because of their gender is eviscerated by the fact that Mr. Dennis, one of the tire technicians plaintiff identifies, never earned as much as plaintiff did. (Randolph Dec., Ex . D, at ¶ 37; Performance Evaluations of Myron Dennis, at Ex. W). Thus, plaintiff's claim that she was paid lower wages than her male co-workers in violation of the Equal Pay Act fails as a matter of law for the additional reason that plaintiff cannot demonstrate that the differences in pay were based on gender.

C. **Plaintiff Cannot Demonstrate That She Was Paid Less Than Her Male Co-workers in Violation of Title VII.**

Although her failure to state an Equal Pay Act claim does not automatically preclude plaintiff from stating a claim under Title VII, see 29 C.F.R. § 1620.27, it is clear that any such claim here also fails. Notwithstanding its broad proscription against sex discrimination in terms and conditions of employment, Title VII makes clear that it is not an unlawful employment practice to apply different standards of compensation if based on factors unrelated to sex. 42 U.S.C. § 2000e-2(h).

Plaintiff cannot establish that Wal-Mart violated Title VII because, as set forth at length above, the position to which she seeks to compare her position is not the same and any pay differences are authorized by the Equal Pay Act, *i.e.*, factors completely unrelated to plaintiff's sex. See Molthan v. Temple Univ., 442 F. Supp. 448 (E.D. Pa. 1977), aff'd, 778 F.2d

955 (3d Cir. 1985) ("Implicit in my decision to grant summary judgment is the conclusion that the differentiation of which [plaintiff] complains was "authorized" by, *i.e.*, did not run afoul of, the Equal Pay Act. It follows that the complained-of differentiation cannot be an unlawful employment practice under Title VII, and that the defendants are entitled to summary judgment on [plaintiff's] Title VII claim with respect to any salary discrimination occurring on or after May 15, 1972."). Thus, plaintiff's pay discrimination claim likewise fails under Title VII.

### D.     Plaintiff Did Not Exhaust Her Administrative Remedies With Respect To Her Harassment or Retaliation Claims.

Plaintiff's purported claims for sexual harassment and retaliation fail because she did not exhaust her administrative remedies. A plaintiff may bring an employment discrimination action only after filing a timely charge with the Equal Employment Opportunity Commission or comparable state agency. 42 U.S.C.A. § 2000e-5; See, e.g., Love v. Pullman, 404 U.S. 522, 523 (1972); Sharpless v. Summers, No. 00-3260, 2001 U.S. Dist. LEXIS 1219 (E.D. Pa. 2001), aff'd, 281 F.3d 224 (3d Cir. 2002) (holding plaintiff did not exhaust his administrative remedies with respect to his hostile work environment claim where his charge of discrimination alleged only discriminatory non-promotion); Tillman v. Pepsi Bottling Group, No. 04-1314 SLR, 2005 U.S. Dist. LEXIS 18891 (D. Del. Aug. 30, 2005) (holding that plaintiff failed to exhaust her administrative remedies with respect to her sexual harassment claim because it was not included in her charge of discrimination). The purpose of this requirement is to give the administrative agency the opportunity to investigate, mediate and take remedial action with respect to a plaintiff's charge of discrimination. See Ostapowicz v. Johnson, 541 F.2d 394, 398 (3d Cir. 1976), cert. denied, 429 U.S. 1041 (1977); see also Stewart v. INS, 762 F.2d 193, 198 (2d Cir. 1985). This purpose would be defeated if a plaintiff were allowed to litigate a claim not previously submitted to and investigated by the appropriate administrative agency. See, e.g.,

Tillman v. Pepsi Bottling Group, No. 04-1314 SLR, 2005 U.S. Dist. LEXIS 18891 (D. Del. Aug. 30, 2005). Because the exhaustion of remedies is a precondition to suit, the Court has no jurisdiction over claims that are not included in plaintiff's charge of discrimination. Id.

Here, plaintiff's charge of discrimination against Wal-Mart did not contain any allegations of sexual harassment. (Plaintiff's Charge of Discrimination, attached as Ex. X). Nor could these claims be surmised from plaintiff's charge, which contains the aforementioned allegations related to disparate pay, but which mention absolutely nothing of the wholly distinct allegations regarding Mr. Revis' conduct. Indeed, in the portion of plaintiff's EEOC Affidavit in which she is asked to explain her "personal harm" -- and under which the EEOC explicitly provides that sexual harassment is an example of the type of harm that a complainant may suffer -- plaintiff wrote, "[n]ot being paid the same as my male co-workers." (EEOC Affidavit, at Ex. Y).

Plaintiff also did not file a subsequent charge alleging harassment or retaliation. To the extent that plaintiff now is attempting to assert harassment and retaliation claims against Wal-Mart in this Court, there can be no dispute that those claims fail because they never were submitted to or investigated by the EEOC.

In short, because plaintiff failed to exhaust the available administrative remedies related to these claims, they should be dismissed with prejudice.

E.    **Even if Plaintiff Had Exhausted Her Administrative Remedies with Respect to Her Sexual Harassment Claim, Plaintiff Cannot Demonstrate That She Was Subjected to A Hostile Work Environment.**

To establish a sexual harassment claim for hostile work environment under Title VII, a plaintiff must show the following: (1) she suffered intentional discrimination because of her gender; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the

same sex in the same position; and (5) the existence of respondeat superior liability. Kunin v. Sears Roebuck and Co., 175 F.3d 289, 293 (3d Cir.), cert. denied, 120 S. Ct. 398 (1999) (citing Andrews v. City of Philadelphia, 89 F.2d 1469, 1482 (3d Cir. 1990)). Plaintiff cannot possibly survive summary judgment on her claim of sexual harassment because she cannot establish the first two of these elements.

     1.    **Plaintiff's Allegations of Harassment Are Unrelated To Her Gender.**

     The threshold issue in a hostile work environment claim is whether the plaintiff has produced evidence of intentional discrimination based on gender. See, e.g., Waite v. Blair, Inc., 937 F. Supp. 460, 468 (W.D. Pa. 1995), aff'd 79 F.3d 1140 (3d Cir. 1996); Walton v. Mental Health Ass'n of Southeastern Penn., 168 F. 3d 661, 667 (3d Cir. 1999) (finding that a personality conflict does not ripen into an actionable discrimination claim simply because one of the parties is a member of a protected class); Shramban v. Kushnerick, 262 F. Supp. 2d 531 (E.D. Pa. 2003), aff'd, No. 03-2742, 2004 U.S. App. LEXIS 23374 (3d Cir. Sept. 30, 2004) ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment. Verbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender....") (internal citations omitted); Seldomridge v. Uni-Marts, Inc., No. 99-496 GMS, 2001 U.S. Dist. LEXIS 9491 (D. Del. July 10, 2001) (granting summary judgment, finding that teasing and comments from the co-worker and customer did not create a hostile work environment because it was not based on gender); Moore v. Grove North Am., Inc., 927 F. Supp. 824 (M.D. Pa. 1996) (determining that allegations that a supervisor may have disliked the plaintiff, or treated her poorly, did not amount to unlawful harassment because it was not based on gender); Reyes v. McDonald Pontiac-GMC Truck, Inc., 997 F. Supp. 614 (D. N.J. 1998) (holding that female employee failed to show gender

harassment, despite allegation that harasser had called her a "bitch" and "miss fucking queen"; animosity was based on a personality conflict, not gender).

Here, plaintiff has not identified sexual comments, innuendo, or gender-based remarks, or any sexually explicit material. Instead, plaintiff relies on two isolated incidents, which admittedly relate to her weight. First, she claims that Mr. Revis once referred to her as a "big bear." (Plaintiff's Dep., Ex. A, at 26, 87). Second, plaintiff alleges that Mr. Revis once brought a picture to work of a large woman that read "this is what happens when you eat lard." (Id. at 87).[9]

Plaintiff conceded that Mr. Revis never made comments to her about her gender and that the comments he did make were based on her weight. (Id. at 27, 44, 83). More specifically, plaintiff testified that, "[i]t was always about me being big. Always." (Id. at 83).

With respect to the "big bear", comment, Mr. Revis testified at his deposition that he made this reference in the context of a conversation in which the employees of the department were comparing themselves to animals. (Revis Dep., Ex. R, at 29-33). Mr. Revis explained that he was compared to a sea lion and two other male employees were compared to Tweety Bird and a lion. (Id. at 30-33). As to the picture, it likewise is consistent with the weight theme, and was shown to male and female employees alike. (Id.)

Simply put, the two incidents plaintiff points to evidence, at best, juvenile and/or tasteless behavior, not sex-based harassment. Accordingly, plaintiff's harassment claim must be dismissed as a matter of law.

---

[9]    The picture was not posted and there was no evidence it remained in the workplace after being shown on one occasion. (Revis Dep., Ex. R, at 34-35).

2.    **The Alleged Harassment Was Not Severe or Pervasive.**

Even assuming plaintiff could show the alleged conduct was gender based, the two isolated incidents plaintiff identifies are too few and far between to rise to the level of severe or pervasive conduct necessary to establish her claim. The Third Circuit has held that "[t]o judge whether [] an environment is hostile or abusive, we must consider all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 667; see also Faragher v. City of Boca Raton, 524 U.S. 775, 787 n.1 (1998) (finding that to be pervasive, the incidents, "must be more than episodic, they must be sufficiently continuous and concerted").

Accordingly, the Third Circuit has consistently set an extremely high bar for establishing severe or pervasive harassment based on sex. See, e.g., Drinkwater v. Union Carbide Corp., 904 F.2d 853, 863 (3d Cir. 1990) ("[h]ostile environment claims must demonstrate a continuous period of harassment, and two comments do not create an atmosphere"); Seldomridge v. Uni-Marts, Inc., No. 99-496 GMS, 2001 U.S. Dist. LEXIS 9492, at * 20-29 (D. Del. July 10, 2001) (granting summary judgment based on absence of pervasive or severe conduct, despite claim that supervisor told plaintiff that he would come out of the bathroom wearing "nothing but a cigarette," came out completely naked, and then posed for the plaintiff standing approximately 36 steps away from the plaintiff); Bonora v. UGI Utilities, Inc., No. 99-5539, 2000 U.S. Dist. LEXIS 15172, at *8-16 (E.D. Pa. Oct. 18, 2000) (granting summary judgment despite claim that harasser touched plaintiff on the waist, brushed up against her buttocks on two or four occasions, bumped her backside, and looked at her chest); Gautney v. Amerigas Propane, Inc., Civ. A. No. 99-197, 2000 WL 1053563 (E.D. Pa. July 28, 2000) (finding that allegations that plaintiff was subjected to "unprofessional, offensive, and callow"

conduct and comments, including discussions concerning the size of a male co-worker's "sex organs and his escapades with other women" and comments "that men did not like aggressive women, that plaintiff was only using 1/3 of her assets and that she should dress in a skirt and heels," did not amount to severe and pervasive harassment); Bishop v. Nat'l R.R. Passenger Corp., 66 F. Supp. 2d 650 (E.D. Pa. 1999) (no hostile work environment claim where supervisor made sexual comments to plaintiffs including that "he loved big women and he loved women with big breasts," commented on plaintiffs' body parts, asked one plaintiff out on a date, asked about plaintiffs' personal lives, and stared, glared and leered at plaintiffs); DeCesare v. Nat'l R.R. Passenger Corp., No. 98-3851, 1999 WL 330258 (E.D. Pa. May 24, 1999) (no hostile work environment where supervisor told plaintiff "[t]hat's a dangerous position for a woman. . . . like you to be in" as she leaned over a table, stared at her rolling tongue across lips and grabbed and rubbed his crotch in front of plaintiff).

Applying a totality of the circumstances analysis, the conduct about which plaintiff complains is not sufficiently severe and pervasive to establish a claim for hostile work environment based on her sex. As reflected above, plaintiff can point to only two isolated incidents over the span of about two years -- the alleged "big bear" incident and the alleged picture incident -- to support her hostile work environment claim. Clearly, these two gender-neutral incidents are far from what the Third Circuit requires to establish the severe and pervasive conduct needed to establish a hostile work environment based on sex.

In sum, plaintiff has not provided **any** competent evidence of harassment to establish: (1) that she was harassed based on her sex; or (2) that the alleged harassment was severe or pervasive. Accordingly, for these additional reasons, judgment should be entered in favor of Wal-Mart on plaintiff's purported harassment claim.

**F.**    **Plaintiff Cannot Prove Retaliation.**

Even had plaintiff exhausted her administrative remedies with respect to her retaliation claim, that claim likewise fails as a matter of law. Plaintiff's claim appears to be based on Mr. Stone's alleged refusal to permit her to start at a later time each day. (Compl. at ¶ 24; Plaintiff's Dep., Ex. A, at 76-77).[10]

To establish a *prima facie* claim of retaliation under Title VII, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected conduct; and (3) a causal connection between the employee's protected activity and the employer's adverse action. See Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir.), cert. denied, 522 U.S. 914 (1997). Plaintiff cannot get over the second or third hurdles.

**1.**    **Plaintiff Was Not Subjected to An Adverse Employment Action.**

The Supreme Court has defined an adverse employment action as "a significant change in employment status, such as hiring firing, failing to promote, reassignment, or a decision causing a significant change in benefits." See Burlington Indus., Inc. v. Ellerth, 524 U.S. 724, 761 (1998); Weston v. Commonwealth of Penn., 251 F.3d 420, 430-31 (3d Cir. 2001). An adverse employment action in most cases inflicts direct economic harm and requires an official act taken by a supervisor within the company who has the power to make economic

---

[10]    To the extent that plaintiff's retaliation claim is premised on an allegation that Mr. Revis harassed her because she complained of discrimination in pay, this claim was clearly undermined at plaintiff's deposition. Specifically, plaintiff testified that she did not complain about her pay to Mr. Revis, and, in fact, stated that "[h]e wasn't even there when [she] was asking for a pay increase." (Plaintiff's Dep., Ex. A, at 78). Further, plaintiff admitted that Mr. Revis would not have known about her charge of discrimination, stating that she "never told him that [she] filed a claim" and "[a]s far as [she] knew, he didn't know that [she] filed a claim." (Id. at 83-84). Nor, as reflected above and below, could Mr. Revis' conduct, without more, comprise an adverse employment action.

decisions affecting employees under his or her control. Ellerth, 524 U.S. at 761-62. The supervisor's decision in most cases is documented in official company records and may be subject to review by higher level supervisors. Id.

Plaintiff has not suffered any adverse employment action. She was not subjected to any discipline, loss of pay, loss of opportunity, transfer, demotion, or any other change in terms or conditions of employment, and in fact continued to receive pay increases. The alleged failure to let her start the workday at a later time, without more, cannot constitute an adverse employment action. McNair v. Home Depot, No. 01-3173, 2002 U.S. Dist. LEXIS 11844 (E.D. Pa. Jan. 10, 2002) (granting summary judgment, holding that being spoken to in a hostile tone and failing to accommodate requests for scheduling changes, without more, were not materially adverse employment actions); Decesare v. National Railroad Passenger Corp., Civ. A. No. 98-3851, 1999 WL 330258, at *4 (E.D. Pa. 1999) (assignment of more difficult work does not constitute a tangible employment action because it "did not cause any direct economic harm"); see also Poland v Computer Sciences Corp., No. 04-217 (GMS), 2005 U.S. Dist. LEXIS 22618, at *18-19 (D. Del. Oct. 5, 2005) (finding that a change in duties is not an adverse employment action); Igwe v. E.I. Dupont de Nemours & Co., No. 03-839, 2005 U.S. Dist. LEXIS 1254, at *7-8 (D. Del. Jan. 24, 2005) (Farnan, J.) (finding that where plaintiff kept the same salary and benefits, he did not suffer an adverse employment action).

Because plaintiff cannot point to any adverse employment action to support her retaliation claim, it fails as a matter of law for this additional reason.

### 2.    Plaintiff Cannot Establish A Causal Connection Between Her Alleged Protected Activity And Any Alleged Adverse Employment Action

Plaintiff's claim of retaliation also fails because she cannot establish a causal connection between her alleged complaints of discrimination and the alleged failure to

accommodate her schedule. Plaintiff has not advanced any evidence to support her claim that the alleged refusal to alter her schedule was motivated by a desire to retaliate against her because of her alleged complaints of discrimination. See Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (holding that the fact that an adverse employment action occurs after protected conduct is normally insufficient to establish causation); Kenney v. Footlocker Worldwide, 55 Fed. Appx. 35, 37 (3d Cir. 2002) (citing Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996)). Indeed, at her deposition, plaintiff could not identify any reason that the two were related other than her own belief that Wal-Mart could have accommodated her schedule and admitted that no one made any comments to her about the fact that she complained about discrimination or filed a charge. (Plaintiff's Dep., Ex. A, at 81-82).

Thus, plaintiff's retaliation claim also fails because she cannot establish the third prong of the *prima facie* case.

## V.    __CONCLUSION__

For all of the foregoing reasons, summary judgment should be entered in favor of Wal-Mart and against plaintiff on all claims.

Respectfully Submitted,

Dated:

William M. Kelleher (#3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 12th Floor
Wilmington, DE  19801
(302) 252-4460

Attorneys for Defendant
Wal-Mart Stores, Inc.

OF COUNSEL:
David S. Fryman
Farrah I. Gold
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215)665-8500

## CERTIFICATE OF SERVICE

I, William M. Kelleher, Esquire hereby certify that on this date I caused two true

and correct copies of the foregoing Brief and Appendix of Defendant Wal-Mart Stores, Inc. in

support of its Motion for Summary Judgment to be served on plaintiff's counsel:

### BY FIRST CLASS MAIL

Noel E. Primos, Esquire
Schmittinger & Rodriguez, P.A.
414 South State Street
Dover, DE 19901

Dated:

William M. Kelleher
(# 3961)