# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CASSANDRA JOHNSON, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| | : NO. 04-1450 (JJF) |
| WAL-MART STORES, INC., | : |
| Defendant. | : |

## DECLARATION OF CORNELL RANDOLPH

I, Cornell Randolph, am the manager of the Dover, Delaware Sam's Club, and I, pursuant to 28 U.S.C. § 1746, state the following based on my personal knowledge:

1. Pay rates at the Dover, Delaware Sam's Club are based on three factors: (1) the nature of the position; (2) the individual skills that the associate brings to the job through prior experience; and (3) performance.

2. Seniority is relevant to pay rates at the Dover, Delaware Sam's Club only to the extent that pay increases accrue over time.

3. Different positions have different minimum rates of pay. For example, reflecting the significant differences in skills, responsibilities, and working conditions, in the beginning of 2004, the minimum start rate for tire technicians was $9.00 per hour, while the minimum starting rate for tire cashiers was $7.70 per hour.

4. Although neither the tire technician nor tire cashier positions require prior experience, Wal-Mart values relevant prior experience. As a result, applicants with significant applicable work experience may receive a starting rate above the minimum rate.

5. Performance can affect pay in two ways: (1) through annual pay increases; and (2) through merit raises.

6. Wal-Mart provides annual performance evaluations, which not only establish goals, appraise an associate's performance, and serve as development/training plans, but also determine annual pay increases. More specifically, the employee's overall rating corresponds with a particular pay increase. For example, in the beginning of 2004, evaluations were based on a 16-point scale, with a rating of 16 meriting a $0.50 per hour raise; a rating of 14-15 meriting a $0.40 per hour raise; a rating of 13 meriting a $0.30 per hour raise; and a rating of 12 or lower resulting in no pay raise.

7. Merit raises (*i.e.*, increases separate and apart from the annual pay raise) are rare, and are given only to those employees who demonstrate exceptional performance.

8. Associates who are not meeting expectations in attendance or who have had a coaching since the last performance evaluation are not eligible for a merit raise.

9. Employees may ask their manager to recommend a merit raise or managers can request merit raises on behalf of employees. Managers must use discretion in granting merit raises and are guided by their personal knowledge of employee contributions to Wal-Mart.

10. I have reviewed the evaluations of plaintiff, Johnny Revis, Nathan Gibson, Kevin Rash, and Myron Dennis and the payroll records of the store to confirm the performance and pay

rates set forth in the paragraphs below. Those documents are attached as Exhibits G-Q (plaintiff), S (Revis), T-U (Gibson), V (Rash), and W (Dennis).

11. Plaintiff started at the minimum pay rate for front-end cashiers in 1996, which was $6.50 per hour.

12. In her 90-day evaluation, plaintiff earned a rating of "standard" and the rating's corresponding pay increase of $0.30 per hour, for a pay rate of $6.80 per hour.

13. In March 1997, plaintiff received a six-month review in which she was advised that she had to "improve on selling extended warranties."

14. In September 1997, plaintiff earned an above standard rating. Correspondingly, she received a $0.40 per hour pay increase, for a pay rate of $7.20 per hour. Nonetheless, plaintiff was instructed that she had to improve her "sense of urgency" in dealing with clients.

15. In 1998, Wal-Mart again found plaintiff lacking in the area of urgency, but her performance still warranted an above standard rating and a $0.40 per hour pay increase, for a pay rate of $7.60 per hour.

16. In June 1999, Wal-Mart promoted plaintiff from front-end cashier to membership and marketing and granted her a $0.50 per hour pay increase, for a pay rate of $8.10 per hour.

17. In her 1999 evaluation, plaintiff again received an above average rating, but again was reminded that she had to improve her sense of urgency and sales. Her 1999 pay increase was $0.40 per hour, for a pay rate of $8.50 per hour.

18.     In 2000, plaintiff's performance declined to average. Accordingly, she received a pay increase of $0.30 per hour, for a pay rate of $8.80.

19.     On March 12, 2001, before her 2001 annual review, plaintiff received a written coaching regarding insufficient credit sales that adversely impacted her productivity.

20.     On August 25, 2001, plaintiff transferred laterally to the position of tire cashier. In her 2001 evaluation, Wal-Mart noted that plaintiff failed to focus on "opportunities in credit contribution." Wal-Mart gave her a $0.40 per hour pay increase, for a pay rate of $9.20 per hour.

21.     In 2002, plaintiff again earned a $0.40 per hour pay increase, for a pay rate of $9.60 per hour. Wal-Mart management advised plaintiff that to receive a larger pay increase, she had to improve in the dependability/responsibility category by making herself more available.

22.     In her 2003 annual review, plaintiff again was rated as deficient in the dependability/responsibility sub-category and in the effort/initiative sub-category of the "strive for excellence" category. Nonetheless, she still qualified for, and received, a $0.40 per hour pay increase, for a pay rate of $10.00 per hour. That rate was $2.30 per hour above the minimum starting rate for the tire cashier position at that time.

23.     As a result of an internal assessment done by Wal-Mart, many positions received pay increases during the summer of 2004, including plaintiff's position. Plaintiff received a $0.66 per hour pay increase at that time, for a pay rate of $10.66 per hour.

24.     In her 2004 annual review, plaintiff was rated as lacking in the effort/initiative sub-category of the "strive for excellence" category and the proper dress code sub-category of

"service to the member" category. Yet plaintiff qualified for and received an additional $0.40 per hour pay increase for a pay rate of $11.06 per hour.

25. As set forth above, plaintiff's performance has not been exceptional. Consequently, she has not earned a merit raise. Additionally, as stated in several evaluations, plaintiff has failed to meet Wal-Mart's attendance standards, which precluded her from receiving a merit raise.

26. Plaintiff did not have any prior experience that would have warranted her receiving a rate of pay above the minimum rate of pay when she started at Wal-Mart.

27. Wal-Mart actively recruited Johnny Revis because he had substantial related work experience as both a tire technician and a supervisor of a tire department.

28. On August 6, 2003, Wal-Mart hired Mr. Revis as a tire technician at a starting pay rate of $10.00 per hour ($1.00 per hour above the minimum $9.00 per hour for tire technicians) based on his prior experience.

29. Mr. Revis' 90 Day Evaluation was perfect, warranting a $0.50 per hour pay increase, for a pay rate of $10.50 per hour.

30. In November 2003, Mr. Revis was promoted to the team lead position -- a position for which plaintiff did not apply. As team lead, Mr. Revis earned a pay increase of $0.50 per hour, for a pay rate of $11.00 per hour.

31. Mr. Revis continued to receive exceptional evaluations, warranting pay raises consistent with those evaluations.

32. Wal-Mart hired Nathan Gibson in April 1998 as a tire technician at a starting rate of pay of $6.50 per hour. At that time, plaintiff's rate of pay was $7.20 per hour and was increased to $7.60 later that year.

33. Mr. Gibson received two $0.40 per hour annual increases and four $0.50 per hour increases over the course of his employment.

34. In 2002 and 2003, Mr. Gibson's performance evaluations were perfect. In recognition of his consistent exceptional performance, Mr. Gibson received three merit increases during his employment.

35. Kevin Rash, who started as a tire technician at Wal-Mart before plaintiff, likewise has had consistently above standard and exceptional performance ratings, including a number of perfect evaluations, which have warranted $0.40 and $0.50 increases throughout his employment with Wal-Mart. After receiving another exceptional evaluation in 2004, Mr. Rash's rate of pay was $12.40 per hour.

36. Wal-Mart hired Myron Dennis as a tire technician on June 19, 2002 at a rate of $9.00 per hour.

37. Mr. Dennis received one $0.50 per hour pay increase and one $0.40 per hour pay increase, but at no time earned more than plaintiff.

38. Following the filing of her charge of discrimination, plaintiff was not transferred, disciplined, demoted or subjected to any other change in working conditions.

39.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ____ day of October, 2005

_____
Cornell Randolph

39.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 21 day of October, 2005

_____
Cornell Randolph