### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

CASSANDRA JOHNSON                    *
                                     *
        Plaintiff,                   *        CIVIL ACTION
                                     *        NO. 04-1450 (JJF)
v.                                   *
                                     *
WAL-MART STORES, INC.,               *
                                     *
        Defendant.                   *

---

### PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

                    SCHMITTINGER AND RODRIGUEZ, P.A
                    BY:   WILLIAM D. FLETCHER, JR.
                          Bar I.D. #362
                    BY:   NOEL E. PRIMOS, ESQUIRE
                          Bar I.D. #3124
                          414 South State Street
                          P.O. Box 497
                          Dover, Delaware 19903-0497
                          (302) 674-0140
                          Attorneys for Plaintiff

Dated:  11|30|05

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . .   iii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS . . . .   1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . .   2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . .   4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . .   10

I.   SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . .   10

II.  SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S
     DISPARATE TREATMENT AND EQUAL PAY ACT CLAIMS . . . .   10

     A.   Plaintiff performed work substantially
          similar to that of her male co-workers . . . .   11
     B.   Plaintiff received less pay than did her
          male co-workers for equal work . . . . . . . .   13
     C.   Even assuming, arguendo, that summary judgment
          is granted on Plaintiff's equal pay act claims,
          Plaintiff's claims of unequal pay under
          Title VII must still survive . . . . . . . . . 15

III. SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S
     HOSTILE ENVIRONMENT CLAIMS . . . . . . . . . . . . .   17
     A.   Plaintiff's claims of a hostile work
          environment arise out of her original
          complaint of discrimination and, moreover,
          were mentioned in her initial complaint
          filed with the Delaware Department
          of Labor . . . . . . . . . . . . . . . . . . .   17
     B.   Plaintiff has established a *prima facie* case of
          hostile work environment sexual harassment . . . 19
          1.   Plaintiff has established that she
               was singled out for harassment by
               her supervisor based on her gender. .   20
          2.   This harassment was pervasive and
               regular . . . . . . . . . . . . . . . .   23
          3.   This treatment by Mr. Revis
               detrimentally affected Plaintiff . .   24
          4.   This discrimination would
               detrimentally affect a reasonable
               woman in Plaintiff's position . . . .   25

i

5.    Wal-Mart is liable for the hostile
      environment under a theory of
      *respondeat superior* because Mr. Revis
      was Plaintiff's supervisor and,
      in addition, higher management
      was aware of Mr. Revis's conduct
      but took no action to remedy the
      situation . . . . . . . . . . . . . . . 25

IV.   SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S
      CLAIMS OF RETALIATION . . . . . . . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**TABLE OF AUTHORITIES**

PAGE

**CASES**

Andrews v. City of Philadelphia,
    895 F.2d 1469 (3d Cir. 1990) . . . . . . . 19, 21, 22, 25, 27

Angelo v. Bacharach Instrument Co.,
    555 F.2d 1164 (3d Cir. 1977) . . . . . . . . . . . . . . . 11

Bishop v. Wood,
    426 U.S. 341 (1976) . . . . . . . . . . . . . . . . . . . 10

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . 10

Cifarelli v. Village of Babylon,
    93 F.3d 47 (2d Cir. 1996) . . . . . . . . . . . . . . . . 10

Ebert v. Office of Information Systems,
    1998 U.S. Dist. LEXIS 9100 (D. Del. 1998) . . . . . . 17, 18

Faragher v. City of Boca Raton,
    524 U.S. 775 (1998). . . . . . . . . . . . . . . . . 26, 27

International Union of Electrical, etc. v. Westinghouse,
    631 F.2d 1094 (3d Cir. Ct. App. 1980). . . . . . . . . . . 12

Knott-Ellis v. Delaware Dept. of Correction,
    2001 U.S. Dist. LEXIS 12861 . . . . . . . . . . . . . . . 11

Kunin v. Sears Roebuck and Company,
    175 F.2d 289 (3d Cir.),
    cert. Denied, 120 S.Ct. 398 (1999) . . . . . . . . . . 27,28

Lamb-Bowman v. Delaware State University,
    152 F.Supp. 2D 553 (D. Del. 2001) . . . . . . . . . . . 11

Price v. Delaware Department of Correction,
    40 F.Supp. 2d 544 (D. Del. 1999) . . . . . . . . . . . 29

Revis v. Slocomb Industries, Inc.,
    814 F.Supp. 1209 (D. Del. 1993) . . . . . . . . . . . 18

Schwapp v. Town of Avon,
    118 F.2d 106 (2d Cir. 1997) . . . . . . . . . . . . . . 19

United States v. Diebold,
    369 U.S. 654 (1962) . . . . . . . . . . . . . . . . . . 10

<u>Usery v. Allegheny County Institution Dist.</u>,
  544 F.2d 148 (3d Cir. Ct. App. 1976). . . . . . . . . . . 13

<u>Van Heest v. McNeilab, Inc.</u>,
  624 F.Supp. 891 . . . . . . . . . . . . . . . . . . . 10,15

<u>Washington v. Delaware</u>,
  2003 U.S. Dist. LEXIS 12534 . . . . . . . . . . . . . . 11

<u>Zalewski v. M.A.R.S. Enterprises, Ltd.</u>,
  561 F.Supp. 601 (D. Del. 1982) . . . . . . . . . . . . . 18

**FEDERAL STATUTES**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . 10

29 U.S.C. 206(d)(1) . . . . . . . . . . . . . . . . 1, 11, 29

42 U.S.C.A. § 2000e-2h . . . . . . . . . . . . . . . . . 1, 15

**FEDERAL REGULATIONS**

29 C.F.R. § 1620.27 . . . . . . . . . . . . . . . . . . . . . 15

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

On November 15, 2004, Plaintiff, Cassandra Johnson filed this employment discrimination case against Wal-Mart Stores, Inc. ("Wal-Mart") alleging discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII") and violations of the Equal Pay Act, 29 U.S.C. § 206. Defendant Wal-Mart filed its Answer on January 13, 2005.

Wal-Mart filed a Motion for Summary Judgment on October 31, 2005. Plaintiff files this brief in opposition to the motion because genuine issues of material fact exist in her case.

1

## SUMMARY OF ARGUMENT

Summary judgment should be denied because there are genuine issues of material fact with regard to Plaintiff's claims, and those claims should be submitted to a jury.

1.   Summary Judgment on Plaintiff's claims of disparate treatment and unequal pay based on her sex under the Equal Pay Act should be denied.   Genuine issues of material fact exist with regard to Plaintiff's claims that her pay was unequal to that of her male counterparts who performed substantially similar work. Plaintiff works in the tire department at the Dover, Delaware Sam's Club.   Although Plaintiff is fully trained as both a tire cashier and a tire technician, she receives less pay than other male counterparts in the department in which she works, even though she performs her cashier duties in addition to the physical labor required of tire technicians.   Further, even assuming *arguendo*, that Defendant's motion is granted as to the Equal Pay Act claims, Plaintiff's claims based on Title VII should nonetheless survive.   Plaintiff has established a *prima facie* case of discrimination in pay based on her gender.

2.   Summary Judgment should be denied on Plaintiff's hostile environment claims.   Plaintiff has established that her supervisor singled her out for discriminatory treatment by making multiple derogatory comments about Plaintiff's weight.   Plaintiff's supervisor made these numerous comments on a continuing basis with the purpose of demeaning Plaintiff in front of her co-workers and even customers.   Plaintiff has therefore established a *prima facie*

2

case for hostile environment sexual harassment, and summary judgment should be denied on her claims.

3.     Summary judgment should be denied as well on Plaintiff's claims of retaliation after she complained of discrimination. The facts, viewed in the light most favorable to Plaintiff, permit an inference that Mr. Revis's harassing actions were, at least in part, in response to Plaintiff's complaints. The facts also permit an inference that the failure of Plaintiff's managers to take any action against Mr. Revis, even though they knew of his inappropriate behavior, was motivated by a desire to retaliate against Plaintiff for filing her complaints.

3

## STATEMENT OF FACTS

Work History

Plaintiff began her employment at the Dover, Delaware Sam's Club (hereinafter referred to as "Wal-Mart"), in 1996, as a front-end cashier. (Declaration of Cornell Randolph, at ¶ 11) (B32[1]). Plaintiff started at a pay rate of $6.50 per hour.  In June of 1999, Wal-Mart promoted Plaintiff from front-end cashier to a role in the membership and marketing department.  (Randolph Dec., at ¶ 16) (B32).  On August 25, 2001, Plaintiff transferred to the tire department to begin a new position as a "tire cashier."  (Randolph Dec., at ¶ 20) (B33).  Soon after this transfer, Plaintiff received training and became certified as a "tire technician" with the ability to change and mount tires in the tire department. (Plaintiff's Dep., at 21-22) (B7-8).

At the time of the alleged discrimination, Plaintiff worked (and still works) in the tire department at Wal-Mart.  Plaintiff's dual roles as a tire cashier and tire technician require Plaintiff to perform physical work substantially similar to that of her male coworkers in the tire department.  Among her other duties, Plaintiff is required to stock tires, pull down tires for customers, and carry purchased tires back to the shop for installation.  (Plaintiff's Dep., at 24-25, 30) (B8, B10). Plaintiff is also required, on a regular basis, to go outside to inspect customers' cars to determine which type of tire the

---

[1] Reference is to Appendix to Plaintiff's Answering Brief filed herewith.

4

customer needs. (Plaintiff's Dep.,at 73) (B20). As a trained tire technician, Plaintiff is further required to assist with installation of tires on an as-needed basis in the tire installation shop. (Plaintiff's Dep., at 18-19) (B7). In her deposition, Plaintiff stated that she helped in the shop approximately two to three times per week. Id.

*Pay Rates*

When compared to her male counterparts in the tire department, Plaintiff's pay increased at a much slower rate than the male employees.

Johnny Revis (Plaintiff's supervisor at the time of the alleged discrimination), began work at Wal-Mart on August 6, 2003 as a tire technician at a starting pay rate of $10.00 per hour. (Randolph Dec., at ¶ 28) (B34). In November 2003, Mr. Revis was promoted to team leader. (Randolph Dec., at ¶ 30) (B34). His rate of pay was increased to $11.00 per hour. Id.

Kevin Rash began working at Wal-Mart on April 4, 1995 as a tire technician. (B46). Mr. Rash received a number of pay raises and by the beginning of April, 2004 was receiving $12.40 per hour. Id. At that same time, by April, 2004, Plaintiff was receiving only $10.00 per hour. (Randolph Dec., at ¶ 22-23) (B33).

Nate Gibson began work at Sam's Club as a tire technician in April of 1998. (Randolph Dec., at ¶ 32) (B35). Mr. Gibson started at a pay rate of $7.20 per hour. Id. Mr. Gibson received three merit increases during his employment. (Randolph Dec., at ¶ 34) (B35). By March of 2003, Mr. Gibson was making $10.80 per

hour.  Id.  Plaintiff, on the other hand, who had been at Wal-Mart since 1996, was only making $9.60 hour by the middle of 2003. (Randolph Dec., at ¶ 21) (B33).

Furthermore, Nate Gibson was given a merit increase when he requested one from Cornell Randolph.  (Plaintiff's Dep. 63) (B18). Mr. Randolph, however, denied Plaintiff's request for a merit increase when she asked for one soon after Nate Gibson received his merit increase.  Id.

*The Alleged Harassment*

Johnny Revis, the team leader in the tire department, subjected Plaintiff to numerous and continuous demeaning comments about her weight.  As Plaintiff stated in her deposition, these comments occurred "every day" and were "always" about her weight. (Plaintiff's Dep. at 83) (B23) .  Plaintiff was singled out for these comments, and the men in the tire department were not subjected to the same treatment.  (Plaintiff's Dep., at 56) (B16). **Plaintiff was the only woman working in the tire department during the relevant time periods.**

In addition to the other general derogatory comments about her weight, Mr. Revis at one point called Plaintiff a "big bear" in front of a co-worker, Lakeria Bryant, and a customer. (Plaintiff's Dep. at 26) (Plaintiff's Aff., at ¶ 3) (B9, B28). Plaintiff never heard Mr. Revis make any comments about the weight of the male employees in the tire department.  (B28).  Mr. Revis stated he never made fun of any other employee's weight.  (Revis Dep., at 33) (B43).  In his deposition, Mr. Revis did admit that

6

he made a comment to Plaintiff about being like a "big bear." (Revis Dep., at 29) (B39). Mr. Revis stated, however, that this comment was part of a larger discussion comparing all the employees in the department to animals. (Revis Dep., at 31-32) (B41-42).

On other occasions, Mr. Revis often sarcastically referred to Plaintiff as "The Genius" when he had to tell a co-worker to ask Plaintiff a question about store policy or procedure to which Mr. Revis did not know the answer. (Plaintiff's Aff., at ¶ 4) (B28). Specifically, Mr. Revis would tell these employees, "I don't know. Why don't you go ask 'The Genius'?" (Plaintiff's Aff., at ¶ 4) (B28). Mr. Revis also, at one point, brought in a tasteless picture of a large, scantily-clad woman and showed it to Plaintiff. (Plaintiff's Dep., at 87) (B24).

On numerous occasions beginning in late 2003, Plaintiff reported Mr. Revis's harassing behavior to her supervisors and managers at Wal-Mart. (Plaintiff's Dep., at 85) (B23). Despite these complaints, however, the Wal-Mart managers took no action. (Plaintiff's Dep., at 41-43) (B12-13). After numerous complaints to her supervisors at Wal-Mart, Plaintiff filed complaints with the Delaware Department of Labor/EEOC on November 18, 2003. (B49).

Mr. Revis also became excessively angry with Plaintiff for not telling him exactly when she was taking her lunch break. In particular, on January 24, 2004 when she took her lunch break, Mr. Revis became extremely angry and accused her of leaving half an

7

hour earlier than she had actually left according to the time
clock.  (Plaintiff's Journal Entry, dated 1/24/04) (B52).  Mr.
Revis also became upset with Plaintiff for not informing him when
she was taking her bathroom break.  (Plaintiff's Dep., at 79)
(B22).  Yet Mr. Revis did not become upset with the men in the
tire department when they took bathroom breaks.  (Plaintiff's
Journal Entry, dated 1/29/04) (B53).  Plaintiff reported that Mr.
Revis went so far as to get on the intercom and call her name over
the speaker system when Mr. Revis felt that she had been gone too
long on her break, even if Plaintiff was simply trying to help a
customer find something in another department. (Plaintiff's Dep.,
at 79) (B22).  Mr. Revis would also continuously complain about
Plaintiff's performance.  Id.  Plaintiff remarked in her
deposition that no one had ever had a problem with her performance
before Mr. Revis.  Id.

Plaintiff continued to complain to her supervisors about Mr.
Revis's harassing behavior.  On January 29, 2004, specifically,
Plaintiff met with Jeremy Stone to complain about Mr. Revis's
behavior.  (Plaintiff's Journal Entry, dated 1/29/04) (B53).  At
that time, Plaintiff mentioned to Mr. Stone that she believed that
Mr. Revis's actions were retaliation for a complaint she filed
against him in September of 2003.  Id.  Instead of taking any
action to remedy the situation, however, Mr. Stone advised
Plaintiff just to make fun of Mr. Revis in return.  (Plaintiff's
Aff., at ¶ 8) (B28).

On January 30, 2004, Plaintiff called the home office about

8

the conversation she had the previous day with Mr. Stone. (Plaintiff's Journal Entry, dated 1/30/04) (B56). She reported Mr. Revis's harassing behavior towards her and also reported her frustration with her supervisors' inaction in this matter. The woman with whom Plaintiff spoke at the home office then sent an e-mail to Cornell Randolph, the manager of the Dover Sam's Club regarding this conversation. Id.

That same day, January 30th, Plaintiff met with Mr. Randolph about Mr. Revis's actions. Mr. Randolph, however, only justified and excused Mr. Revis's behavior. (Plaintiff's Journal Entry, dated 1/30/04) (B57). Mr. Randolph told Plaintiff that she should be accountable to Mr. Revis and should tell Mr. Revis when she was taking her break and where she was going any time she left the department. Id. Plaintiff complained to Mr. Randolph that none of the male employees in the tire department had to report this closely to Mr. Revis. Id.

No official action was taken after this meeting to correct Mr. Revis's behavior.

9

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where there is no genuine issue as to any material fact.   Fed. R. Civ. P. 56(c). The Court must view the facts in the light most favorable to the non-moving party.   United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).   The party moving for summary judgment has the burden of identifying evidence it believes demonstrates the absence of a genuine issue of material fact.   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   For purposes of a summary judgment motion, the non-moving party's version of the facts must be accepted, and all disputed facts resolved in her favor.   Bishop v. Wood, 426 U.S. 341 (1976). The Court must also resolve all ambiguities and draw all reasonable inferences against the moving party. Cifarelli v. Village of Babylon, 93 F.2d 47, 51 (2d Cir. 1996).

### II.    SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S DISPARATE TREATMENT AND EQUAL PAY ACT CLAIMS

Plaintiff has raised several issues of fact that remain unresolved at this stage of her case.   These issues of fact are sufficient to preclude summary judgment.

Plaintiff bears the burden of establishing a *prima facie* case of unequal pay.   In order to establish a *prima facie* case, a plaintiff must show that "she performed a job equal to a job performed by one or more males." Van Heest v. McNeilab, Inc., 624

10

F.Supp. 891, 897 (D. Del. 1985).  A "threshold requirement" in this analysis is 'that the jobs to be equated be substantially the same." Id. (quoting Angelo v. Bacharach Instrument Co., 555 F.2d 1164, 1173 (3d Cir. 1977)).

Plaintiff's job need not be identical to that of her male counterparts in the department in order for there to be a violation of the Equal Pay Act.  Plaintiff must only demonstrate that her work "requires equal skill, effort, and responsibility . . . performed under similar working conditions." 29 U.S.C. § 206(d).

In order to establish a claim for disparate treatment, Plaintiff must show: (1) that she is a member of a protected class; (2) that she suffered some form of adverse employment action; and (3) that this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently.  Lamb-Bowman v. Del. State Univ., 152 F.Supp. 2d 553, 559 (D. Del. 2001); see also Knott-Ellis v. Delaware Dept. Of Correction, 2001 U.S. Dist. LEXIS 12861 (D. Del.), at *11; Washington v. Delaware, 2003 U.S. Dist. LEXIS 12534 (D. Del.), at *7.


### A.   PLAINTIFF PERFORMED WORK SUBSTANTIALLY SIMILAR TO THAT OF HER MALE CO-WORKERS

In order to establish a violation under the Equal Pay Act, Plaintiff need only show that her work is "substantially similar"

to that of her male counterparts.  <u>International Union of</u>
<u>Electrical, etc. v. Westinghouse Electric</u>, 631 F.2d 1094 (3d Cir.
1980).  Defendant does not contest the fact that Plaintiff is as
qualified as her male counterparts in the tire department.
Defendant agrees that Plaintiff is certified as a tire technician,
just as are her male co-workers.  Plaintiff actually has more
responsibility than her male co-workers because she is both a
cashier in the department and performs the functions of a tire
technician if needed.

Further, Plaintiff puts forth substantially the same physical
effort as the men in her department because she must count and
stock the tires  (Plaintiff's Dep., at 30) (B10) as well as
pulling down the tires for the customers.  (Plaintiff's Dep., at
73) (B20).  Neither is Plaintiff always in the climate-controlled
environment inside the store, as Defendant suggests.  Rather, she
must often go outside to inspect customers' cars to determine what
type of tires the customers' cars require.  (Plaintiff's Dep., at
73) (B20).  Most importantly, Plaintiff helps perform the actual
physical work of a tire technician by helping install tires on the
cars approximately two or three times a week when no one else is
available.  (Plaintiff's Dep., at 18-19) (B7).   Plaintiff
clarified at her deposition that she can and does mount tires on
vehicles, which is the same work done by the tire technicians.
(Plaintiff's Dep., at 92) (B25).

Defendant contends that Plaintiff's job was not equal to that
of the male employees in her department.  The test under the Equal

12

Pay Act does not require identity of work, but only substantial equality of the jobs performed. Usery v. Allegheny County Institution Dist., 544 F.2d 148, 153 n.4 (3d. Cir. 1976). Plaintiff's deposition and her affidavit demonstrate that her job was substantially similar in terms of physical labor required. In addition, Plaintiff, as a tire cashier and tire technician, was actually more qualified than her male counterparts who were merely tire technicians. She was trained in both positions and expected to perform all the functions of a tire cashier and a tire technician on an as-needed basis.

**B.    PLAINTIFF RECEIVED LESS PAY THAN DID HER MALE CO-WORKERS FOR EQUAL WORK**

As outlined *supra* in the Statement of Facts, Plaintiff suffered an adverse employment action because she received significantly fewer raises in pay than did her male co-workers in the time period before she filed her complaints with the EEOC and Delaware Department of Labor. For example, Nate Gibson's pay increased from $7.80 per hour to at least $10.80 per hour from the middle of 1999 through May of 2003--an increase of $3.00 per hour. Over this same time period, Plaintiff's pay increased only $1.10.

Plaintiff also received fewer pay increases during this period of time than Kevin Rash, another tire technician in the department. By the end of September, 1999, Kevin Rash was earning $9.50 per hour. (B47-48). By the beginning of June, 2004, Mr. Rash was earning $12.40, for a total pay increase of $2.90.

13

(B46).  This gross disparity in pay increases is enough, alone, to give rise to an inference of discrimination.  At the very least, it gives rise to a material question of fact as to the presence of discrimination against Plaintiff.

Defendant attempts to argue that this disparity in merit increases was based solely on the evaluations Plaintiff and her male counterparts received from their superiors and had nothing to do with Plaintiff's gender.  Defendant contends, specifically, that pay increases at Wal-Mart were available through (1) annual pay increases; and (2) merit raises.  (Randolph Dec., at ¶ 5) (B31).  Managers are permitted to use their discretion in awarding these merit raises and annual pay increases.  Defendant cannot escape the fact that these evaluations were completed by Plaintiff's male supervisors who could have easily, and may well have, used these evaluations as an opportunity to discriminate against Plaintiff and deny her the pay increases she deserved based on her gender.

Plaintiff has pointed out, specifically, that she requested a merit raise from her manager but was turned down.  (Plaintiff's Dep., at 63) (B18).  At the same time, however, employee Nate Gibson received a merit raise.  Id.

At any rate, the question of whether Plaintiff's managers used these periodic evaluations as a means to discriminate against Plaintiff is a question of fact for the jury to determine, not a matter of law appropriate for summary judgment.  Plaintiff is entitled to have a jury evaluate these subjective evaluations to

14

determine whether they were motivated by sex discrimination.

      **C.    EVEN ASSUMING, ARGUENDO, THAT SUMMARY JUDGMENT IS GRANTED ON PLAINTIFF'S EQUAL PAY ACT CLAIMS, PLAINTIFF'S CLAIMS OF UNEQUAL PAY UNDER TITLE VII MUST STILL SURVIVE**

Even assuming, *arguendo*, that Defendant's Motion for Summary Judgment is granted as to Plaintiff's claims under the Equal Pay Act, Plaintiff's Title VII claims should survive. See 19 C.F.R. § 1620.27 (providing that "an act or practice of an employer or labor organization that is not a violation of the EPA may nevertheless be a violation of Title VII").

Plaintiff's Title VII claim is based on the fact that she received disparate treatment through unequal pay. Plaintiff has alleged sufficient facts to create, at the very least, a genuine issue of material fact as to her claims of discrimination under Title VII. In Van Heest, *supra*, the District Court held that the plaintiff's allegations supported "an inference of discrimination, even though [Plaintiff's] job was not sufficiently similar to either of [her male counterparts'] jobs to support an Equal Pay Act claim." Van Heest, 624 F.Supp. at 898.

Further, Defendant has failed to provide complete records of compensation for its employees in response to Plaintiff's discovery requests. In particular, there are very few records of Kevin Rash, and such records are not up to date. Genuine questions of material fact remain on this issue because there is no way to make an accurate comparison of rates of pay without complete and updated records for all Plaintiff's male co-workers

15

in the tire department.

**III. SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S HOSTILE ENVIRONMENT CLAIMS**

    **A.  Plaintiff's claims of a hostile work environment arise out of her original complaint of discrimination and, moreover, were mentioned in her initial complaint filed with the Delaware Department of Labor.**

While Plaintiff's official complaint filed with the EEOC alleged only discrimination based on unequal pay, her allegations of a hostile work environment arise out of her original complaint. Moreover, Plaintiff did mention Mr. Revis's actions in her initial paperwork filed with the Delaware Department of Labor.  In the section entitled "Remedy Information" in her initial paperwork with the DDOL, Plaintiff indicated that she sought, as a remedy, "to continue working at the appropriate pay rate" and to no longer have to endure "fat jokes from my team leader." (B51).

In any event, the actions taken against Plaintiff by Mr. Revis and the failure of the supervisors to take action to prevent Mr. Revis's actions are very possibly a result of Plaintiff's original complaint.  This Court, in Ebert v. Office of Information Systems, 1998 U.S. Dist. LEXIS 9100 (D. Del. 1998), permitted a plaintiff's hostile environment claim to go forward because the claim of hostile environment had a close nexus to the claim of continuing gender discrimination filed in the prior EEOC charge. Id. at *15.  In Ebert, the defendant contended that the plaintiff's hostile environment claims should be dismissed because the specific claims of hostile environment were not raised in the EEOC complaint.  The court held that the proper test to use in

that scenario was "whether or not a reasonable investigation would have led to the facts surrounding plaintiff's claims of hostile work environment and failure to promote." Id. (quoting Zalewski v. M.A.R.S. Enterprises, Ltd., 561 F.Supp. 601, 604-605 (D. Del. 1982)). The court in Ebert noted that "this standard must be applied in accord with the 'sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on the merits.'" Ebert, 1999 U.S. Dist. LEXIS 9100, at *13 (quoting Revis v. Slocomb Industries, Inc., 814 F.Supp. 1209, 1216 (D. Del. 1993)).

The District Court in Ebert found that the plaintiff's claims of ongoing gender discrimination had a close nexus to the claims of hostile environment and a reasonable investigation would have led to the facts surrounding the plaintiff's hostile environment claims. Id. at *16. Because of this close nexus, the District Court refused to dismiss the plaintiff's hostile environment claims.

In the case presently before the Court, Plaintiff's claims of hostile environment arise out of her claims of disparate treatment based on unequal pay. Plaintiff's claims of hostile environment in the present case are sufficiently related to the scope of Plaintiff's original complaints with the DDOL/EEOC and the same facts would have been revealed through a reasonable investigation by the DDOL/EEOC. Most importantly, in her initial paperwork with the DDOL, Plaintiff actually officially complained of Mr. Revis's behavior and his discriminatory treatment towards her. Had the

18

DDOL or EEOC investigated this claim, it would have clearly led to the claims of hostile environment Plaintiff has brought against Defendant.    Summary judgment should, therefore, be denied as to Plaintiff's hostile environment sexual discrimination claims.

### B.    Plaintiff has established a *prima facie* case of hostile work environment sexual harassment.

A court should be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question." Schwapp v. Town of Avon, 118 F.2d 106, 110 (2d Cir. 1997).    Because direct evidence of discrimination is rarely found, record evidence must be carefully scrutinized for circumstantial proof that, if believed, would show discrimination.    Id.

Plaintiff can demonstrate that each necessary element exists for her to bring a successful claim of a sexually hostile work environment.

In order to establish a *prima facie* case for hostile work environment sexual harassment, plaintiff must demonstrate that each of the following five elements exist: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) there is respondeat superior liability. Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).    As

demonstrated below, Plaintiff can establish these elements, and her allegations of a sexually hostile work environment must therefore be allowed to go to the jury.

> **1.   Plaintiff has established that she was singled out for harassment by her supervisor based on her gender.**

Although Mr. Revis may not have made overt derogatory, gender-based comments to Plaintiff, he did single her out for repeated comments about her weight when he did not direct any other such demeaning comments to the men in the department. (Plaintiff's Dep., at 92-93) (B25). These actions are sufficient to create a hostile environment. Plaintiff has established that she was subjected to harassment based on her gender, in that:

(1)   She was singled out by her supervisor, Johnny Revis, as the target of belittling comments about her weight when there is no evidence that the men in the tire department were disparaged about their weight. (Plaintiff's Dep., at 92-93) (B25).

(2)   Plaintiff was subjected to other harassing behavior by her supervisor, such as a taunting comparison of her actions to those of a bear when she rubbed her back against a pole. (Plaintiff's Dep., at 26) (B9).

(3)   Mr. Revis further made sarcastic references to Plaintiff as "The Genius." (Plaintiff's Aff., at ¶ 4) (B28).

The Third Circuit has made clear that an analysis of whether a hostile work environment existed in a particular work place

20

"must concentrate not on individual incidents, but on the overall scenario." <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1484 (3d Cir. 1990). A hostile environment may be created not simply by overtly sexual harassment, but by any offensive conduct directed toward the plaintiff based on the plaintiff's membership in a protected classification. <u>Id</u>. at 1485.

In <u>Andrews</u>, the Third Circuit held that two female police officers were subjected to a sexually hostile work environment by being singled out for a number of non-sexual "practical jokes". The court held that, in determining whether discrimination exists, the examining court must use a totality of the circumstances test which required, in that particular case, "a determination of whether the incidents were happening to these female police officers, and why to no one else." <u>Andrews</u>, at 1485. The Third Circuit further, and most importantly to Plaintiff's claims, held that:

> To make out a case under Title VII it is "only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff 'had been a man she would not have been treated in the same manner.'" . . . . To constitute impermissible discrimination, the offensive conduct is not necessarily required to include sexual overtones in every instance or that each incident be sufficiently severe to detrimentally affect a female employee. "Intimidation and hostility toward women because they are women can obviously result from conduct other than explicit sexual advances."

<u>Id</u>. at 1485 (citations omitted.)

The Third Circuit also held that "the pervasive use of derogatory and insulting terms relating to women generally and

21

addressed to female employees personally may serve as evidence of a hostile environment." Id. at 1485.   The Court in Andrews noted the significant fact that each of the two female Plaintiffs "was the only woman in her squad."   Id. at 1472.

Given the Third Circuit's holding in Andrews, Defendant's repeated contentions that Mr. Revis's jokes were never overtly about Plaintiff's gender are irrelevant.   The essence of Plaintiff's hostile environment claim is that she was treated differently than similarly situated males, and that this treatment was the result of the defendant's intentional discrimination against her as a woman.

The record quite readily lends itself to an inference of discrimination, especially when viewed in the light most favorable to the plaintiff, as required on a motion for summary judgment. Plaintiff was singled out by Mr. Revis for ridicule.   In fact, even by Mr. Revis's account in his deposition, in the one instance in which the men were comparing each other to animals, the men were compared to animals such as Tweety Bird and a sea lion. Plaintiff, on the other hand, who was not a party to this conversation, was compared to a "big bear." (Revis Dep., at 29-31) (B39-41).  As the Court can surely take note, the connotation of being called a bird or a lion is much different than the insinuation related to calling someone, particularly a woman, a "big bear."

Plaintiff made clear in her deposition how Mr. Revis's demeaning comments were directed at her but not at the men.

22

Plaintiff stated, in particular, that Mr. Revis told jokes "to" the males in the department whereas Mr. Revis's jokes were "aimed towards" her. (Plaintiff's Dep., at 26) (B9). She specifically stated that Mr. Revis was "making fun of [her] to [her] coworkers." (Plaintiff's Dep., at 43) (B13). Plaintiff further indicated the full impact of Mr. Revis's harassing comments when she stated: "[I]t's hard enough having, you know, men respect you in an all-man field, but [Mr. Revis] was making the situation worse with his jokes, and even doing it behind my back to my coworkers." Id.

### 2. This harassment was pervasive and regular.

While Defendant attempts to minimize the number of comments made to Plaintiff about her weight, Plaintiff's statements in her deposition reveal a pattern of comments directed toward her specifically. (Plaintiff's Dep., at 26) (B9). Although when under pressure at her deposition Plaintiff was only able to identify two specific instances where Mr. Revis made fun of her by calling her a "big bear" and showing her a tasteless picture of a large woman, Plaintiff's deposition testimony and her affidavit make clear that there was a pattern of comments directed toward her.

Besides comparing Plaintiff to a "big bear" when she scratched her back against a pole, Mr. Revis made numerous other belittling comments about Plaintiff's weight. Plaintiff described these comments as "constant and malicious." (Plaintiff's Dep., at

23

44) (B13).  Plaintiff further stated that Mr. Revis made these comments "every day" and that the comments were "always about me being big." (Plaintiff's Dep., at 83) (B23).  In fact, Mr. Revis apparently made so many comments about Plaintiff that she "would just generally walk away unless there was something that I had to deal directly with him about." (Plaintiff's Dep., at 27) (B9).

Mr. Revis's comments were also so constant that Plaintiff began to "worry about [her] coworkers laughing behind [her] back." (Plaintiff's Dep., at 26) (B9).  In direct contradiction to Defendant's contentions that the harassment was limited only to two isolated instances, Plaintiff stated at her deposition that, "It wasn't just that one bear joke.  It was a lot of jokes.  And then making fun of me to my coworkers." (Plaintiff's Dep., at 43) (B13).  Plaintiff could not think of any other specific instances at the time because "all of them were hurtful" and none stuck out directly in her mind at the time of the deposition. (Plaintiff's Dep., at 55) (B16).

### 3.    This treatment by Mr. Revis detrimentally affected Plaintiff.

Plaintiff stated in her deposition how Mr. Revis's disparaging remarks caused her to have to avoid him unless she had to speak to him about a business matter.  She also stated that it made her feel very isolated in the tire department because Mr. Revis would constantly make belittling comments about her to the men in the department.  Plaintiff noted in her deposition that,

24

"It's harassment having to go to work every day and being forced to work in an uncomfortable environment, and [Mr. Revis] made it uncomfortable for me every day with those jokes and the way he treated me." (Plaintiff's Dep., at 83) (B23). Plaintiff even stated in her deposition that Mr. Revis's behavior caused her to suffer some symptoms of depression and to lose some of her hair. (Plaintiff's Dep., at 88) (B24).

### 4. This discrimination would detrimentally affect a reasonable woman in Plaintiff's position

The court in Andrews, *supra*, held that the objective element of whether the discrimination would detrimentally affect a reasonable person of the same sex in that position is "the more critical for it is here that the finder of fact must actually determine whether the work environment is sexually hostile." Andrews, 895 F.2d at 1483. Because Plaintiff has presented evidence in her deposition necessary to establish the subjective element under the hostile environment test, the objective factor must be allowed to go to the jury.

### 5. Wal-Mart is liable for the hostile environment under a theory of *respondeat superior* because Mr. Revis was Plaintiff's supervisor and, in addition, higher management was aware of Mr. Revis's conduct but took no action to remedy the situation.

Wal-Mart is liable, as the employer, through the actions of Mr. Revis, who was the team leader in the tire department and, consequently, Plaintiff's supervisor. The direct actions of

Plaintiff's supervisor, Mr. Revis, created this hostile environment. As such, Wal-Mart is vicariously liable for the actions of its supervisor, Johnny Revis.

The United States Supreme Court, in <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998), made clear that the actions of an employee's supervisor may be imputed to the employer. In the <u>Boca Raton</u> case, the petitioner, a lifeguard for the City of Boca Raton, claimed two of her supervisors had created a sexually hostile environment. The Supreme Court held that the plaintiff had a valid claim against the city for the actions of her supervisor, subject to an affirmative defense of the reasonableness of the employer's conduct. <u>Id</u>. at 809-810. The Supreme Court rejected an "active-use" test for cases of hostile environment based on vicarious liability, holding that, "We think plaintiffs and defendants alike would be poorly served by an active-use rule." <u>Id</u>. at 805. As a consequence, the proper test for liability of an employer for the actions of a supervisor is only that of "passive or implicit" misuse of supervisory authority. <u>Id</u>. at 804. Under this test, an employer can show as an affirmative defense to liability,

> that the employer had exercised reasonable care to avoid harassment and eliminate it when it might occur, and that the complaining employee had failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided.

<u>Id</u>. at 805.

In the present case, therefore Wal-Mart is liable for the

actions of Mr. Revis, as Plaintiff's supervisor.  Mr. Revis's
direct actions within his supervisory authority over Plaintiff
caused the hostile environment about which Plaintiff now
complains.  Under the Supreme Court's holding in Boca Raton, Mr.
Revis's actions are sufficient to support a claim of hostile
environment sexual harassment.  Moreover, Wal-Mart cannot employ
the affirmative defense set forth in Boca Raton, since it failed
to act with reasonable care to eliminate the harassment, and since
Plaintiff took all avenues open to her to address the problem by
complaining to higher management.

     Thus, regardless of Mr. Revis's position as a supervisor,
Wal-Mart should be held liable for this hostile work environment
since it "knew or should have known of the harassment and failed
to take prompt remedial action." Andrews, 895 F.2d at 1486.  Wal-
Mart was aware of Mr. Revis's actions because Plaintiff had
repeatedly reported Mr. Revis's behavior to higher management.
(Plaintiff's Dep., 40-41) (B12).  Management was also aware of her
DDOL/EEOC claims.  (Plaintiff's Dep., at 82) (B23).

     In Kunin v. Sears Roebuck and Company, 175 F.3d 289 (3d Cir.
1999), the court held that a discrimination claim based on
respondeat superior could not survive because the employer was not
on notice of the claims and the employee had not exhausted her
administrative remedies.  In that case, however, the plaintiff had
only asked her supervisor a vague question as to whether "cursing
was allowed on the sales floor."  Id. at 294.  The plaintiff in
Kunin had never notified her supervisors as to what fellow

27

employee she had a complaint against.  <u>Id</u>.  The present case differs from <u>Kunin</u> both because Mr. Revis was Plaintiff's supervisor and not a fellow employee and because Plaintiff complained specifically about Mr. Revis's conduct.

In the case presently before the Court, Wal-Mart was on ample notice of Plaintiff's claims of disparate and discriminatory treatment.  Plaintiff filed her disparate treatment/unequal pay complaints with the DDOL/EEOC on November 18, 2003.  Defendant was specifically on notice of the claims of harassment because Plaintiff complained, repeatedly, to management about Mr. Revis's behavior.  (Plaintiff's Dep., at 39-41) (B12).  Plaintiff, further, went so far as to call the home office and register a formal complaint with that office on January 30, 2004. (Plaintiff's Dep., at 41-42) (B12-13).

In summary, if the Court views Plaintiff's allegations in the light most favorable to her as the non-moving party, these allegations of a hostile work environment are more than sufficient to present a factual issue as to whether Mr. Revis's repeated derogatory comments about Plaintiff's weight created a hostile environment and were directed at her because she was the only woman in the department.  Plaintiff noted in her deposition that Mr. Revis aimed these comments directly at her.  (Plaintiff's Dep., at 26) (B9).  Defendant has failed to present any evidence that Mr. Revis made similar "jokes" to male workers in the department about their weight.

28

**IV.  SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S
      CLAIMS OF RETALIATION**

In order to establish a *prima facie* case for retaliation
under Title VII, Plaintiff must show that: 1) she engaged in
protected activity; 2) she suffered adverse employment actions;
and (3) a causal link exists between the employment actions and
the exercise of the protected activity.  <u>Price v. Delaware
Department of Correction</u>, 40 F.Supp. 2d 544, 552 (D. Del. 1999).

Defendant does not contest that the filing of a complaint
with the EEOC is a protected act.  Defendant claims that Plaintiff
cannot meet the second or third criteria because the only evidence
of retaliation that Plaintiff has alleged is that her supervisors
did not allow her to change her working hours.  This is not the
only circumstance that gives rise to an inference of retaliation
in Plaintiff's case.  The alleged harassment by Mr. Revis occurred
primarily after Plaintiff filed a complaint of discrimination, and
these actions could easily have been a response to Plaintiff's
complaint.

Plaintiff filed her complaint of discrimination in late 2003.
It is certainly not an unreasonable inference that Mr. Revis knew
about Plaintiff's complaint.  Plaintiff has stated that other
individuals at Wal-Mart knew of her suit.  (Plaintiff's Dep., at
50-51, 82) (B15, B23).  Mr. Revis's derogatory comments directed
toward Plaintiff seem to have intensified after this complaint was
filed.  Plaintiff noted in her deposition that, at first, Mr.
Revis just told general jokes all day.  Plaintiff then noted,

however, that, after a while, "[the comments] started being aimed towards me." (Plaintiff's Dep., at 26) (B9). Plaintiff further stated that Mr. Revis's behavior changed from "being little snide comments to being directly aimed at me." Id.

Plaintiff could not understand exactly why the jokes were suddenly directed towards her. She only noticed that the comments "became more and more frequent and they were always directed at me." (Plaintiff's Dep., at 48) (B14). The timing of her complaint and Mr. Revis's subsequent direction of his comments toward Plaintiff raises an inference that these comments were some form of punishment by Mr. Revis for Plaintiff's filing a discrimination suit. This coincidence lends itself to an inference that these comments were made to single out Plaintiff and punish her for filing a discrimination suit.

Further, higher management in Wal-Mart knew of the complaints, as documented in Plaintiff's journal and noted at her deposition. (Plaintiff's Dep., at 50-51, 82) (B15, B23). Despite this knowledge, however, the higher management at Wal-Mart failed to respond and control Mr. Revis's actions. This inaction is sufficient evidence of retaliation to preclude summary judgment on Plaintiff's claims of retaliation.

**CONCLUSION**

For the reasons given in this Answering Brief, Defendant's
Motion for Summary Judgement should be denied.


SCHMITTINGER & RODRIGUEZ, P.A.

BY: _____
WILLIAM D. FLETCHER, JR.
Bar I.D. #362
NOEL E. PRIMOS
Bar I.D. #3124
414 S. State Street
P.O. Box 497
Dover, DE   19901
(302) 674-0140
Attorneys for Plaintiff

DATED: 11/30/05
NEP: acg

31