IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CASSANDRA JOHNSON | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 04-1450 (JJF) |
| v. | : | |
| | : | |
| WAL-MART STORES, INC., | : | |
| a Delaware corporation | : | |
| | : | |
| Defendant | : | |
| | : | |

## JOINT PROPOSED FINAL PRETRIAL ORDER

On July 13, 2006 at 4:00 p.m., counsel for Plaintiff Cassandra Johnson, and counsel for Defendant Wal-Mart Stores, Inc., will participate in a pretrial conference before this Court pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 16.4 of this Court, and this Court's May 11, 2006 Scheduling Order.

**Plaintiff's Counsel:**

   William D. Fletcher, Jr., Esq.
   Noel E. Primos, Esq.
   Adam C. Gerber, Esq.
   Schmittinger & Rodriguez, P.A.

**Defendant Wal-Mart's Counsel:**

   David S. Fryman, Esquire
   Farrah I. Gold, Esquire
   William M. Kelleher, Esquire (local counsel)
   Ballard Spahr Andrews & Ingersoll, LLP

I.  **NATURE OF THE ACTION:**

This action is brought by Plaintiff Cassandra Johnson (Plaintiff or Johnson) against Defendant Wal-Mart Stores, Inc. d/b/a Sam's Club (SAM'S) pursuant to 42 U.S.C. § 2000e et. seq. for hostile environment sex discrimination, disparate treatment sex discrimination, and retaliation. Plaintiff Johnson also alleges that SAM'S violated the Equal Pay Act, 29 U.S.C. § 206.

Plaintiff has requested trial by jury of her claims. The issues in this case are raised in Plaintiff's Complaint and Defendant's Answers thereto. There are no counterclaims, cross-claims or third-party claims involved.

On October 31, 2005, SAM'S filed a Motion for Summary Judgment. On November 30, 2005, Plaintiff filed her Answering Brief. SAM'S filed its Reply Brief on December 21, 2005. On April 18, 2006, the Court issued its Order denying SAM'S' Motion for Summary Judgment.

II. **JURISDICTION:**

This Court has jurisdiction over Plaintiff's federal law claims pursuant to Title 42 U.S.C. §2000e et. seq. and 28 U.S.C. §§ 1331, 1343.

III. **STATEMENT OF FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF:**

1. Wal-Mart Stores, Inc. d/b/a Sam's Club is a corporation, incorporated under Delaware law.

2. Plaintiff, Cassandra Johnson, (African-American female), was hired as a front-end cashier for Wal-Mart in 1996.

3. Plaintiff (African-American female) currently works in the tire department for Wal-Mart with the official title of tire cashier.

4. Plaintiff has been employed in the tire department at Sam's Club in Dover, Delaware since August 25, 2001.

5. Since beginning her work in the tire department, Plaintiff was the only woman working in the tire department at Sam's Club.

6. Plaintiff's supervisor, Mr. Revis, referred to Plaintiff as a "big bear."

7. Plaintiff timely filed a Complaint with the Delaware Department of Labor against SAM'S. Plaintiff received a Notice of Right to Sue and timely filed this suit.

IV. **STATEMENTS OF THE ISSUES OF FACT THAT THE PARTIES CONTEND REMAIN TO BE LITIGATED:**

    A. <u>**Plaintiff's issues of fact**</u>

        1. Whether, at all times relevant to the Complaint, Plaintiff has been qualified for her job position and has satisfactorily performed all duties of her job position.

        2. Whether Johnny Revis began his employment with Defendant on August 6, 2003 as a tire technician.

        3. Whether Johnny Revis's beginning rate of pay was $10.00 per hour.

        4. Whether Kevin Rash began his employment with Defendant on April 4, 1995 as a tire technician.

        5. Whether Nate Gibson began his employment with Defendant in April of 1998.

        6. Whether Nate Gibson's beginning rate of pay was $7.20 per hour.

        7. Whether Johnny Revis became Plaintiff's supervisor in the tire department in November 2003.

        8. Whether Mr. Revis made a number of derogatory comments about Plaintiff's weight.

        9. Whether Mr. Revis referred sarcastically to Plaintiff as "The Genius."

        10. Whether Plaintiff's supervisor, Johnny Revis, showed Plaintiff and her co-workers a picture of a large, scantily-clad woman.

11. Whether Johnny Revis used the intercom system in Defendant's store to criticize Plaintiff and tell her to get back to work when she was taking a bathroom break.

12. Whether Defendant, through its supervisor, Johnny Revis, discriminated against Plaintiff on the basis of her sex. **[SAM'S MAINTAINS THAT THIS IS AN ISSUE OF LAW.]**

13. Whether Plaintiff performed substantially the same work as her male co-workers in the tire department. **[SAM'S MAINTAINS THAT THIS IS AN ISSUE OF LAW.]**

14. Whether Plaintiff's rate of pay increased more slowly than that of her male co-workers in the tire department.

15. Whether Plaintiff was refused merit increases when her male co-workers in the tire department were granted merit raises.

16. Whether, on January 29, 2004, Plaintiff met with Jeremy Stone to complain about Mr. Revis's behavior.

17. Whether on January 30, 2004, Plaintiff met with Cornell Randolph to register her complaints about Mr. Revis's behavior towards her.

18. Whether on January 30, 2004, Plaintiff called SAM'S home office to report the conversation she had with Mr. Stone the previous day and to complain that no action had been taken against Mr. Revis.

19. Whether Johnny Revis retaliated against Plaintiff for filing complaints about his behavior towards her. **[SAM'S MAINTAINS THAT THIS IS AN ISSUE OF LAW.]**

20. Whether other supervisors and managers of SAM'S retaliated against Plaintiff for complaining about Mr. Revis's behavior. **[SAM'S MAINTAINS THAT THIS IS AN ISSUE OF LAW.]**

21. Whether any action was taken against Mr. Revis in response to Plaintiff's complaints about his behavior toward her.

B. **Wal-Mart's issues of fact**

1. Whether Plaintiff's duties (*i.e.*, that of a tire cashier) were the same as the duties of a tire technician.

2. Whether there were any male employees in Plaintiff's position who were paid at a higher rate than Plaintiff.

3. Whether Plaintiff's pay, like all employees at the Dover, Delaware Sam's Club, is and was based on three factors: (1) the nature of the position; (2) the individual skills that the associate brings to the job through prior experience; and (3) performance.

4. Whether different positions have different minimum rates of pay. Whether, for example, in the beginning of 2004, the minimum starting rate for the technicians was $9.00 per hour, while the minimum starting rate for the cashiers was $7.70 per hour.

5. Whether SAM'S values relevant prior experience. Whether, as a result, applicants with significant applicable work experience may receive a starting rate above the minimum rate.

6. Whether performance can affect pay in two ways: (1) through annual pay increases; and (2) through merit raises.

7. Whether SAM'S provides annual performance evaluations, which not only establish goals, appraise an associate's performance, and serve as development/training plans, but also determine annual pay increases.

8. Whether merit raises are rare, and are given only to those employees who demonstrate exceptional performance.

9. Whether associates are ineligible to receive a merit raise three months before and six months after performance evaluations.

10. Whether, on August 25, 2001, Plaintiff transferred laterally to the position of tire cashier. Whether, in her 2001 evaluation, SAM'S noted that Plaintiff failed to focus on "opportunities in credit contribution." Whether SAM'S gave her a $0.40 per hour pay increase, for a pay rate of $9.20 per hour.

11. Whether, in 2002, Plaintiff again earned a $0.40 per hour pay increase, for a pay rate of $9.60 per hour. Whether SAM'S management advised Plaintiff that to receive a larger pay increase, she had to improve in the dependability/responsibility category by making herself more available.

12.　　Whether, in her 2003 annual review, Plaintiff again was rated as deficient in the dependability/responsibility sub-category and in the effort/initiative sub-category of the "strive for excellence" category. Whether, nonetheless, she still qualified for, and received, a $0.40 per hour pay increase, for a pay rate of $10.00 per hour. Whether that rate was $2.30 per hour above the minimum starting rate for her position at that time.

13.　　Whether, as a result of an internal assessment done by SAM'S, many positions received pay increases during the summer of 2004, including Plaintiff's position. Whether Plaintiff received a $0.66 per hour pay increase at that time, for a pay rate of $10.66 per hour.

14.　　Whether, in her 2004 annual review, Plaintiff was rated as lacking in the effort/initiative sub-category of the "strive for excellence" category and the proper dress code sub-category of "service to the member" category. Whether Plaintiff nonetheless qualified for and received an additional $0.40 per hour pay increase for a pay rate of $11.06 per hour.

15.　　Whether Plaintiff's alleged comparators include Johnny Revis, Myron Dennis, Nathan Gibson, and Kevin Rash, all of whom were tire technicians, not tire cashiers.

16.　　Whether SAM'S actively recruited Mr. Revis because he had substantial related work experience as both a tire technician and a supervisor of a tire department. Whether, on August 6, 2003, SAM'S hired Mr. Revis as a tire technician at a starting pay rate of $10.00 per hour ($1.00 per hour above the minimum $9.00 per hour for tire technicians) based on his prior experience.

17. Whether Mr. Revis' 90 Day Evaluation was perfect, warranting a $0.50 per hour pay increase, for a pay rate of $10.50 per hour.

18. Whether, in November 2003, Mr. Revis was promoted to the team lead position -- a position for which Plaintiff did not apply. As team lead, Mr. Revis earned a pay increase of $0.50 per hour, for a pay rate of $11.00 per hour. Whether Mr. Revis continued to receive exceptional evaluations, warranting pay raises consistent with those evaluations.

19. Whether SAM'S hired Mr. Gibson in April 1998 as a tire technician at a starting rate of pay of $6.50 per hour. Whether, at that time, Plaintiff's rate of pay was $7.20 per hour and was increased to $7.60 later that year. Whether Mr. Gibson received two $0.40 per hour annual increases and four $0.50 per hour increases over the course of his employment.

20. Whether, in 2002 and 2003, Mr. Gibson's performance evaluations were perfect. Whether, in recognition of his consistent exceptional performance, Mr. Gibson received three merit increases during his employment, taking him to a pay rate of $10.80 per hour.

21. Whether Mr. Rash, who started as a tire technician at SAM'S before Plaintiff, likewise has had consistently above standard and exceptional performance ratings, including a number of perfect evaluations, which have warranted $0.40 and $0.50 increases throughout his employment with SAM'S. Whether, after receiving another exceptional evaluation in 2004, Mr. Rash's rate of pay was $12.40 per hour.

22. Whether SAM'S hired Mr. Dennis as a tire technician on June 19, 2002 at a rate of $9.00 per hour.

23. Whether Mr. Dennis received one $0.50 per hour pay increase and one $0.40 per hour pay increase, but at no time earned more than Plaintiff. Whether, in fact, Plaintiff admitted during her deposition that she is "not really certain of whether he ever made anywhere near what [she] and Nate and Mr. Revis made."

24. Whether Mr. Revis made any gender-related comments to Plaintiff.

25. The frequency and severity of Mr. Revis' alleged comments to Plaintiff.

26. Whether Plaintiff was transferred, disciplined, demoted or subjected to any other change in working conditions after she filed a charge of discrimination.

27. Whether Mr. Revis was disciplined in response to Plaintiff's complaints about Mr. Revis' behavior.

## V. STATEMENTS OF THE ISSUES OF LAW THAT THE PARTIES CONTEND REMAIN TO BE LITIGATED:

### A. <u>Plaintiff's issues of law:</u>

None.

### B. <u>Defendant's issues of law:</u>

1. Whether Plaintiff can demonstrate that she received unequal wages for work which was equal in terms of skill, effort, and responsibility under similar working conditions.

2. Whether Plaintiff can establish that any pay differences between her and her alleged comparators were based on sex and not supported by factors other than sex.

3. Whether Plaintiff can establish that she was subjected to a hostile work environment – *i.e.* that she suffered intentional discrimination based on her gender and that the alleged harassment was severe and pervasive.

4. Whether Plaintiff can demonstrate that SAM'S retaliated against her – *i.e.* that she was subjected to an adverse employment action because she engaged in protected activity.

## VI. EXHIBITS:

### A. Plaintiff's Exhibits:

1. Payroll records and personnel file of Plaintiff.

2. Payroll records and personnel file of Johnny Revis.

3. Payroll records and personnel file of Nate Gibson.

4. Payroll records and personnel file of Kevin Rash.

5. Journal of Plaintiff.

6. Depiction of "scantily-clad woman" shown to Plaintiff by Johnny Revis. (Plaintiff assumes this depiction is in the possession of Defendant.) **[Mr. Revis testified at his deposition that he threw this in the trash.]**

7. Plaintiff's Demonstrative Exhibit re: Pay.

### B. Defendant's objections to Plaintiff's Exhibits:

    1.    Wal-Mart objects to the admissibility of Plaintiff's journal on the grounds that it contains hearsay and is a narrative.

**C.**    **<u>Defendant's Exhibits:</u>**

    1.    Employee Handbook

    2.    Plaintiff's Handbook Acknowledgment

    3.    Open Door Communications Policy

    4.    Harassment/Inappropriate Conduct Policy

    5.    Harassment/Inappropriate Conduct Posting

    6.    Sexual Harassment Posting

    7.    Tire Cashier Job Description

    8.    Tire Technician Job Description

    9.    Training Plan for TMA Cashier & Sales

    10.    Plaintiff's evaluations

    11.    Plaintiff's Application for Employment

    12.    Plaintiff's Scheduling Availability Forms

    13.    Plaintiff's Evaluations

    14.    Plaintiff's Associate Commendation Form

15. Plaintiff's Coaching for Improvement Form

16. Plaintiff's Earnings Reports

17. Hotline Complaint Report re: Plaintiff

18. Plaintiff's EEOC Affidavit

19. Johnny Revis' evaluations

20. Johnny Revis' Coaching for Improvement Form

21. Myron Dennis' evaluations

22. Nathan Gibson's evaluations

23. Kevin Rash's evaluations

24. Demonstrative Exhibit re: Pay

**D.     Plaintiff's objections to Defendant's Exhibits:**

1. Plaintiff reserves any and all objections to Defendant's exhibits pending review by Plaintiff's counsel, including but not limited to Exhibits 18 and 24.

2. Plaintiff objects to Defendant's Exhibit Number 17 on the grounds of relevance.

VII. **WITNESSES:**

    A. <u>**Plaintiff's Witnesses:**</u>

        1. Plaintiff

        2. Cornell Randolph (as on cross)

        3. Jeremy Stone (as on cross)

        4. Johnny Revis (as on cross).

        5. Lakeria Bryant (as on cross).

        6. Deborah Kennedy (as on cross).

Plaintiff reserves the right to call any witnesses included in Defendant's Witness List.

    B. <u>**Defendant's Witnesses:**</u>

        1. Plaintiff

        2. Cornell Randolph

        3. Jeremy Stone

        4. Johnny Revis

        5. Deborah Kennedy

SAM'S reserves the right to call any witnesses included in Plaintiff's Witness List and, with the Court's permission, on rebuttal, additional witnesses not listed.

[PLAINTIFF OBJECTS TO THE USE OF ANY WITNESS NOT PREVIOUSLY IDENTIFIED, NO MATTER AT WHAT STAGE THE DEFENDANT INTENDS TO CALL THE WITNESS.]

VIII. **BRIEF STATEMENT OF WHAT PLAINTIFF EXPECTS TO PROVE IN SUPPORT OF HER CLAIM, INCLUDING DETAILS OF DAMAGES SOUGHT AS OF THIS DATE:**

Defendant subjected Plaintiff to discrimination on the basis of her sex. Defendant Wal-Mart Stores, Inc. created a hostile environment through the actions of Plaintiff's supervisor, Johnny Revis, who made a number of derogatory comments about Plaintiff's weight and singled out Plaintiff for other demeaning comments. Specifically, Johnny Revis made constant jokes directed at Plaintiff and, at least once, referred to her as a "big bear." Mr. Revis also sarcastically referred to Plaintiff as "the Genius" on a number of occasions. In addition to these demeaning comments, Mr. Revis used the intercom system in Defendant's store to criticize Plaintiff and tell her to get back to work when she was taking a bathroom break. Defendant, through the actions of Mr. Revis, also retaliated against Plaintiff in response to Plaintiff's complaints of discrimination. Mr. Revis's demeaning comments intensified after Plaintiff made complaints about his behavior.

In addition, Defendant violated the Equal Pay Act and 42 U.S.C. § 2000e et. seq. by paying Plaintiff less than her male co-workers in the tire department for performing substantially the same work. Defendant refused to grant Plaintiff merit increases in pay while, at the same time, granting Plaintiff's male co-workers merit increases. Plaintiff was trained and qualified as both a tire cashier and a tire technician and was required to perform work in both capacities on a regular basis.

The damages sought by Plaintiff include any and all damages provided by 42 U.S.C. § 2000e et. seq. and 29 U.S.C. § 206, and all other applicable remedies available under the law, including but not limited to, lost wages, salary, employment benefits, back pay, interest, liquidated damages, and any and all other pecuniary damages; compensatory damages, including damages for mental and emotional pain and suffering; punitive damages; pre-judgment and post-judgment interest, attorney's fees and costs; and any other relief, whether legal or equitable, that this Court deems just and appropriate.

## IX. STATEMENTS OF DEFENSE:

Plaintiff is a "tire cashier" at the Dover, Delaware Sam's Club. Plaintiff's claims under Title VII and the Equal Pay Act fail for several reasons:

- Plaintiff measures her pay against male **tire technicians**, yet tire technicians, those who actually perform the tire maintenance and installation, have significantly different duties than **tire cashiers**, who spend their time servicing customers and performing similarly non-physical work.

- Moreover, even assuming the work of a tire technician were substantially equal to the work of a tire cashier, any differences in pay are explained by the undisputed differences in prior experience and performance, not gender. Indeed, Plaintiff earned **more** as a tire cashier than one of the male tire technicians she identified in support of her claim.

- Plaintiff, who admittedly loves her job, cannot demonstrate that the alleged harassment was gender based or that it was severe or pervasive. Over the course of two years, Plaintiff could only specify a single gender-neutral reference to her as a "big bear" in the context of a conversation in which the alleged harasser made similar animal references to male co-workers, including himself, and a tasteless picture of a large woman that was shown to co-workers a single time.

- Plaintiff's claim of retaliation fails for the additional reasons that Plaintiff did not suffer an adverse employment action and cannot demonstrate a causal connection between her complaint of pay discrimination and any alleged retaliation. Plaintiff remains employed, has not been demoted, disciplined, or transferred and has continued to receive pay increases consistent with her performance and position. Nor is there any evidence, in any event, of any causal connection between Plaintiff's complaint of discrimination and any of the alleged harassment or alleged failure to adjust her schedule.

Accordingly, judgment should be entered in favor of SAM'S and against Plaintiff on all counts of her complaint.

X.  **STATEMENTS OF COUNTERCLAIMANTS OR CROSS-CLAIMANTS:**

There are no counterclaims or cross-claims in this case.

XI.  **AMENDMENTS TO PLEADINGS**

A.  **Plaintiff:**

None.

B.  **Defendant:**

None.

XII.  **CERTIFICATION OF GOOD FAITH SETTLEMENT NEGOTIATIONS:**

The undersigned hereby certify that three-way communication has occurred between persons having authority in a good faith effort to explore the resolution of this controversy by settlement.

XIII.  **OTHER MATTERS DEEMED APPROPRIATE BY THE PARTIES:**

A.  **Plaintiff:**

None.

B.  **Defendant:**

None.

XIV.  **THIS ORDER SHALL CONTROL THE SUBSEQUENT COURSE OF THE ACTION UNLESS MODIFIED BY THE COURT TO PREVENT MANIFEST INJUSTICE.**

| | |
|---|---|
| SCHMITTINGER & RODRIGUEZ, P.A. | BALLARD SPAHR ANDREWS & INGERSOLL, LLP |
| BY: /s/ William D. Fletcher, Jr.<br>WILLIAM D. FLETCHER, JR., ESQ.<br>(I.D. #362) | BY: /s/ William M. Kelleher<br>WILLIAM M. KELLEHER, ESQ.<br>(I.D. # 3961)<br>919 Market Street, 12th Floor<br>Wilmington, DE 19801 |
| BY: /s/ Noel E. Primos<br>NOEL E. PRIMOS, ESQ.<br>(I.D. #3124)<br>414 S. State Street | BY: /s/ David S. Fryman<br>DAVID S. FRYMAN, ESQ. |
| BY: /s/ Adam C. Gerber<br>ADAM C. GERBER<br>(I.D. #4653)<br>P.O. Box 497<br>Dover, DE 19901<br>(302) 674-0140<br>*Counsel for Plaintiff* | BY: /s/ Farrah I Gold<br>FARRAH I. GOLD, ESQ<br>*Counsel for Defendant* |

SO ORDERED on _____, 2006.

_____
THE HON. JOSEPH J. FARNAN